619 So.2d 87 (1993)
Anthony MARTINO, Plaintiff-Appellee,
v.
Orville SUNRALL a/k/a Will Branch Clearwater Campgrounds, Clearwater Campgrounds, and A.B.C. Insurance Company, Defendants-Appellants.
No. 92 CA 0838.
Court of Appeal of Louisiana, First Circuit.
April 23, 1993.
Rehearing Denied June 3, 1993.
Writ Denied August 3, 1993.
*88 Tom H. Matheny, Hammond, for defendant-appellant State of La.
Andrew Blanchfield, Theodore A. Mars, Jr., Mars & Blanchfield, New Orleans, for plaintiff-appellee Anthony Martino.
J. Elliott Baker and C.T. Williams, Jr., Metairie, for Attys. Gen.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
FOGG, Judge.
This tort suit arises out of diving accident that resulted in a spinal cord injury. The issues of liability and damages were bifurcated for trial by a judge. The judgment *89 awarding damages is the subject of this appeal.

FACTS
On July 4, 1982, plaintiff, Anthony Martino, was diving and swimming in a creek at the Clearwater Campgrounds near Varnado, Louisiana. On his last dive, plaintiff hit his head and was severely injured. An unidentified stranger pulled him to the side of the creek. Shortly, thereafter, an ambulance transported him to the Washington-St. Tammany Charity Hospital. Upon arrival in the emergency room at the Washington-St. Tammany Hospital, Dr. K. Nguyen Don, the emergency room physician on duty at the time, examined Martino. The nurse on duty in the emergency room was Gloria Wilson. X-rays taken by Sylvia Fusselle confirmed Dr. K. Nguyen Don's diagnosis of quadriplegia indicative of a spinal cord injury. Plaintiff was later transported to the Southern Baptist Hospital in New Orleans. He now suffers from a high level of quadriplegia.

PROCEDURAL HISTORY
Martino filed suit for damages against Orville Sunrall, a/k/a Orville Sumerall, a/k/a/ Byron Will Branch (hereinafter "Orville Sunrall"), the owner and operator of Clearwater Campgrounds; Clearwater Campgrounds; Great Southwest First Insurance Company, the insurer of Clearwater Campgrounds and Sunrall; the State of Louisiana, through the Department of Health and Human Resources (hereinafter "DHHR"); Gloria Wilson; Dr. K. Nguyen Don; and Sylvia Fusselle. Gloria Wilson, Dr. K. Nguyen Don and Sylvia Fusselle were dismissed from the lawsuit without prejudice on joint motion of these defendants and plaintiff. On July 26, 1988, pursuant to a settlement agreement, Orville Sunrall, Clearwater Campgrounds, and Great Southwest Fire Insurance Company were dismissed from the lawsuit with prejudice. Therefore, when the case went to trial, only DHHR remained a defendant.
The issue of liability was tried in February of 1989. The trial court found the plaintiff to be 85% at fault, DHHR to be 14% at fault and the unidentified stranger to be 1% at fault. That judgment is now final.
The issue of damages was tried in October of 1991. Judgment was rendered in favor of plaintiff in the amount of 14% of the following:

Past Medical $ 318,732.99
Pain and Suffering 2,500,000.00
Past Wages 56,219.00
Loss of Future Wages
 and Earning Capacity 300,000.00
Future Medical Care
and Related Benefits 3,944,793.00
 _____________
 $7,119,744.99

APPEAL
In the present case, DHHR has appealed the judgment awarding damages and Martino has answered the appeal. On appeal DHHR argues that the issue of liability is properly before this court in this appeal; that the trial court's assessment of damages for lost wages, past medical and future earnings is excessive; that the trial court erred in awarding damages in excess of $500,000.00 against DHHR in violation of La.R.S. 40:1299.39; and that the trial court assessed an incorrect rate of interest on the damage award. In his answer to the appeal, Martino contends the trial court erred in awarding inadequate damages for loss of future earning capacity and for future treatment programs.

LIABILITY
DHHR alleges that the issue of liability is now before this court on appeal. In making this argument, appellant contends that the prior history of this case does not bind this court on the issue of liability. We disagree.
In an unpublished opinion at 577 So.2d 1229, this court affirmed the trial court's judgment finding DHHR to be 14% at fault. From that judgment, DHHR filed a Writ of Certiorari to the Louisiana Supreme Court. That writ was denied at 581 So.2d 707. No petition for rehearing was filed. That judgment became final and definitive shortly thereafter. La.C.C.P. art. 2166.
*90 Before the trial of the damages issue, DHHR indicated that it intended to introduce evidence as to the issue of causation. Plaintiff filed a motion in limine, seeking to have all evidence as to causation excluded. The trial court rendered judgment, declaring that DHHR would "not be allowed to introduce evidence at the damage trial regarding the defendants legal causation of damages to plaintiff and/or the degree of such fault." From that judgment DHHR sought writs with this court. This court denied the writ on October 29, 1991.
Appellant argues that this court's action on the supervisory writ application is not binding on the judges who later consider the case on appeal, and, therefore, this court can consider the issue of causation. As previously discussed, the judgment on the issue of liability is final and definitive. The subsequent action of the defendant in attempting to address the issue at the trial of the damages issue had no effect on the finality of the judgment on liability. The issue of liability is not before this court at this time.

DAMAGES
DHHR argues that the trial court erred in its assessment of damages attributed to loss of wages, past medical and future medical. In his answer to the appeal, Martino alleges the trial court erred in its assessment of loss of future earning capacity and in its valuation of future annual treatment programs.
Before an appellate court can disturb an award for damages, the record must clearly show the trial court abused its discretion in making the award. The trial court's award may not be modified unless it is unsupported by the record. The question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Reck v. Stevens, 373 So.2d 498 (La.1979).

Loss of Past Wages
DHHR contends that the award of $56,219.00 for loss of past wages is excessive, noting that Martino was not employed at the time of the accident. We disagree.
Damages for loss of past wages are not necessarily limited to a multiplier of the amount earned at the time of injury. Folse v. Fakouri, 371 So.2d 1120 (La.1979). It can be computed on the amount the plaintiff would in all probabilities have been earning at the time of trial. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976).
Dr. Melville Wolfson testified as an expert in the field of economics. He opined that plaintiff, who was a college student at the time of the accident, lost two to three years of work before trial due to the accident and valued that loss at $56,219.00. That calculation was based on Martino successfully completing his undergraduate degree in May of 1989 and entering the labor force at that time. We find no abuse of discretion in the trial court's award of $56,219.00 for loss of past wages in accord with testimony of Martino's expert economist.

Loss of Earning Capacity
Both DHHR and Martino assign error in the award of $300,000.00 for loss of future earnings and earning capacity.
It is well established that a loss of future earnings award is not merely predicated upon the difference between a plaintiff's earnings before and after a disabling injury. Such an award is predicated upon the difference between a plaintiff's earning capacity before and after a disabling injury. Folse v. Fakouri, 371 So.2d 1120 (La.1979). Additionally, awards for loss of future income are speculative by nature and cannot be calculated with mathematical certainty. Therefore, the trial court necessarily must have much discretion in fixing lost wage awards. Robinson v. Graves, 343 So.2d 147 (La.1977); Black v. Ebasco Services Inc., 411 So.2d 1159 (La.App. 1st Cir.), writ denied, 414 So.2d 1253 (La.1982).
The record reflects that Dr. Victoria Fernandes, a specialist in the field of physical medicine and rehabilitation, testified that Martino has no movement in his *91 hands, lower extremities, or triceps; that his elbow flexion is good to normal; that his wrist flexion is trace on the right and fair plus on the left; that he can move his head independently; that his condition is permanent; and that he probably would not return to work. Dr. Robert D. Voogt, an expert in the field of rehabilitation, also testified that plaintiff probably would not return to the work force.
Dr. Smith, an expert in the field of physical medicine and rehabilitation, testified on behalf of DHHR that plaintiff has reached his maximum point of rehabilitation and that he should be able to return to work. Martino testified that he is presently working on a master's degree and intends to try to work.
Dr. Wolfson testified that the present value of Martino's loss of future wages and earning capacity amounted to $611,018.00. This was based on a base salary of $30,000.00, without Martino returning to employment.
With respect to future wages and loss of earning capacity, the trial court stated the following:
As to future, it's very difficult for the court to arrive at what can happen here. This man has potential. I certainly believe his earning capacity is impaired, depending on what he trains himself to do. Without a return to employment, at the rate computed by Dr. Wolfson, we're looking at six hundred and eleven thousand dollars, and I believe that this plaintiff will earn some money and will be happy to do it because of its beneficial affect on him, and so that amount should be somewhat less that the six hundred and eleven thousand dollars that's stated there. How much to reduce it by is difficult to tell. This Court will award the sum of three hundred thousand dollars.
We find that these conclusions of the trial court in setting the award for loss of future earnings are supported by the record. Considering Martino's education and the nature and severity of his injury, it is clear that the trial court did not abuse its vast discretion in determining that plaintiff was entitled to $300,000.00 for loss of future income.

Past Medical Expenses
DHHR contends that the trial court erred in awarding the amount of $318,732.99 for past medical expenses. We find no merit to this argument.
The sum of $318,732.99 awarded of past medical was in accord with the evidence introduced by plaintiff and the testimony. It does not constitute an abuse of the trial court's much discretion.

Future Care
DHHR contends that the trial court's award of $3,944,793.00 for future medical care and related benefits is excessive and the evidence does not support the award. Martino argues that the trial court erred in reducing plaintiff's annual treatment programs from $153,956 per year to approximately one-half that figure. We find no merit to either allegation.
Future medical expense must be established with some degree of certainty. Weston v. Bayou Sale Contractors, Inc., 506 So.2d 818 (La.App. 1st Cir.1987). An award for future medical expenses is by nature somewhat speculative. Peterson v. Western World Ins. Co., 536 So.2d 639 (La.App. 1st Cir.1988), writ denied, 541 So.2d 858 (La.1989).
Dr. Fernandes testified that, with the appropriate care, there will be no reduction in Martino's life expectancy; that additional physical therapy would improve Martino's motor functioning in the areas of self-care and the ability to transfer independently from the bed to the wheelchair; that Martino will need twenty-four hour a day care; and that he will need to be examined by her once or twice a year, if he had no additional problems.
Dr. Smith testified that Martino has reached his maximum point of rehabilitation; that he does not need any additional physical therapy or rehabilitation; that he needs the assistance of a trained assistant twelve hours each day; and that all his future medical problems can be handled by an internist.
*92 Dr. Voogt testified that, because of the invasive procedures which must be performed on Martino each day, he will need the care of a licensed practical nurse for twelve hours and the care of an attendant for the remaining twelve hours. Dr. Voogt testified that Martino would have the following one-time costs:

ONE-TIME COSTS
Medical Evaluations $ 681.00
Medical Treatment 9,360.00
Therapeutic Evaluations 2,673.00
Treatment Program 37,640.00
Educational Program 48,060.00
Equipment 7.00
Health Club Membership 350.00
Home Modifications 60,250.00
 ___________
 $159,021.00

In the award of one-time costs the trial court eliminated the sum of $48,060.00 which was assigned to educational programs and awarded the sum of $110,961.00.
With respect to future medical costs, Dr. Voogt testified that Martino will have the following annual costs:

ANNUAL COSTS
Medical Evaluations $1,790.00
Medical Treatment 475.00
Therapeutic Evaluations 125.00
Treatment Programs 153,956.00
Support Care 3,850.00
Transportation 3,931.00
Health Club Dues 18,843.00
 ___________
 $183,764.00

Dr. Wolfson stated that Martino's post-trial life expectancy is thirty-eight years, using this figure, calculated the present value of the yearly costs to be $5,832,822.00. The trial court agreed with all of Dr. Wolfson's figures except that attributed to treatment programs. The trial court reduced that figure and awarded the sum of $3,944,793.00 to Martino for future care.
After a careful review of the record, we find that the future medical expenses was adequately supported by the record and find no clear abuse of the trial court's discretion.

APPLICABILITY OF LA.R.S. 40:1299.39
In general, La.R.S. 40:1299.39, termed the Public Medical Malpractice Statute, limits the liability of the State of Louisiana in malpractice cases to $500,000.00, other than liability for medical expenses. Sibley v. Bd. of Sup'rs of Louisiana State Univ., 477 So.2d 1094 (La.1985). In 1982, when the plaintiff's injury occurred, this legislation applied only to state-employed physicians and other professionals providing medical and related health care services. The Louisiana Supreme Court specifically held that the liability cap did not apply to judgments rendered against the State itself. Id. at 1104. In 1988, the legislature amended the statute to include in the definition of "person covered by this Part," the State and any of its departments, specifically including state hospitals. See 1988 La. Acts No. 786. In Marcel v. Louisiana State Department of Public Health, 492 So.2d 103 (La.App. 1st Cir.), writ denied, 494 So.2d 334 (La.1986), this court held that the retroactive application of La.R.S. 40:1299.39 would disturb vested rights and, therefore, could not be applied retroactively. For the same reasons expressed in that case, we decline to apply the amended version of the statute retroactively. Therefore, this legislation does not apply to damages recoverable by plaintiff against the State.

RATE OF INTEREST ON AWARD
DHHR argues that the trial court erred in awarding judicial interest on future damages. La.R.S. 13:4203 provides: "[l]egal interest shall attach from date of judicial demand, on all judgments, sounding in damages, `ex delicto', which may be rendered by any of the courts." No distinction is made between damages which compensate for past losses and those which compensate for future losses. Tastet v. *93 Joyce, 531 So.2d 520 (La.App. 5th Cir.1988). Therefore, we hold the trial judge's award of interest on the entire amount of the judgment was correct.
In its final assignment of error, DHHR argues that the trial judge erred in imposing legal interest on the judgment at the legal rate from the date of judicial demand, rather than applying La.R.S. 13:5112(C) which provides, in part:
C. Legal interest on any claim for personal injury or wrongful death shall accrue at six percent per annum from the date of judicial demand until the judgment thereon is signed....
Added by Acts 1985, No. 509, effective September 6, 1985.
La.C.C. art. 6 provides that "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." La.R.S. 1:2 provides that "[n]o Section of the Revised Statutes is retroactive unless it is expressly so stated."
We find that La.R.S. 13:5112(C) is clearly substantive in that it limits the amount of interest that may accrue in a personal injury case. See Hood v. State through DOTD, 587 So.2d 755 (La.App. 2nd Cir.), writ denied, 590 So.2d 81, 82 (La.1991); Dubois v. State Farm Ins. Co., 571 So.2d 201 (La.App. 3d Cir.1990), writ denied, 575 So.2d 367 (La.1991). Because La.R.S. 13:5112(C) is substantive in nature, the trial court was correct in not applying it retroactively.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal, in the amount of $1,987.50, are assigned against DHHR.
AFFIRMED.