713 So.2d 442 (1998)
Ronald S. RUIZ
v.
Frank J. ONIATE, Jr.
Frank J. ONIATE, Jr.
v.
Lanzio MAGEE and Boh Brothers Construction Company, Inc.
Frank J. ONIATE, Jr.
v.
ST. JUDE MEDICAL CENTER, INC.
Frank J. ONIATE, Jr.
v.
MAHORNER CLINIC, et al.
No. 97-C-2412.
Supreme Court of Louisiana.
May 19, 1998.
Miles Gregory Trapolin, New Orleans, Richard Phillip Ieyoub, Attorney General, for Applicant.
*443 Evan Farrell Trestman, Robert Alan Caplan, Vincent J. Glorioso, Jr., Terry E. Albritton, Dan Brian Zimmerman, M. David Gelfand, New Orleans, for Respondent.
KIMBALL, Justice.[*]
We granted this writ specifically to address the legal question of whether employees of the defendants, Charity Hospital of Louisiana at New Orleans and the State of Louisiana through the Department of Health and Hospitals (hereinafter "Charity"), are "persons" covered under the Malpractice Liability for State Services Act such that the $500,000 cap provided in La. R.S. 40:1299.39, as that statute existed in 1988,[1] applies to damages caused by their malpractice. After considering the statute's definition of a "Person," the legislature's purpose in enacting such an Act, and the history of La. R.S. 40:1299.39, we conclude defendants' employees are covered "persons" and, because Charity's liability to plaintiff is solely vicarious, Charity is entitled to the statutory cap on damages, exclusive of future medical care and related benefits, arising from the malpractice of its employees.

FACTS AND PROCEDURAL HISTORY
In this medical malpractice case, plaintiff, Frank Oniate, Jr., sued various physicians and hospitals for malpractice for the failure to diagnose his osteomyelitis (septic hip) caused by a flare-up of a latent surgical staph infection. Plaintiff sued, among others, Dr. David R. Silvers and Dr. John J. Walsh, Jr., for their failure to properly treat the "original" staph infection, and Dr. Bernard Manale and Charity for their failure to diagnose plaintiff's condition. All defendants, except Charity, settled prior to trial. At trial, a stipulation signed by the attorneys was entered into evidence which stated, "[T]he examining physicians performing examinations of the plaintiff at Medical Center of Louisiana, at New Orleans (hereinafter referred to as "Charity Hospital") were each employees at Charity Hospital at the time of such examinations and treatment, acting within the course and scope of their duties in providing health care on the dates relevant hereto, including January 11, 1988 and January 12, 1988." Subsequent to a bench trial, during which Charity sought to prove liability on the part of the other defendants, the trial court held Charity's employees' failure to diagnose Oniate's osteomyelitis on January 12, 1988 was the sole cause of his injuries. The court also found Charity was not protected by the statutory cap for medical malpractice damages because the cap did not apply to the state and its agencies at the time the practice occurred. The trial court awarded damages to Oniate in the following amounts: for physical pain and suffering, $2,000,000; for mental and emotional pain and suffering, risks and fears, $2,000,000; for future health care costs, $2,702,066; for past medical expenses, $54,432; and for earning capacity losses, $449,821.
On appeal, the fourth circuit reduced the award for past medical expenses to $45,724.39 and affirmed in all other respects. Ruiz v. Oniate, 96-2211 (La.App. 4 Cir. 8/6/97), 697 So.2d 1373. The court held that although Charity itself was not protected by the statutory cap, where it was vicariously liable, as it was here, it could take advantage of the cap if its employees were entitled to the cap under La. R.S. 40:1299.39. However, the court of appeal found that at the time Oniate was injured, the Malpractice Liability for State Services Act (MLSSA) applied only to individuals acting in a professional capacity in providing health care services when acting in the course and scope of their employment and pursuant to a written contract *444 with the state or any political subdivision thereof. Therefore, because Charity did not introduce any contracts with its employees, it was not error for the trial court to deny Charity the benefit of the cap. Addressing defendant's other concerns, the court of appeal also found that the admission of liability occurring when Drs. Silvers and Walsh settled runs only in favor of the plaintiff and was never intended to confer an evidentiary benefit adverse to the plaintiff upon third parties, that the trial court was not manifestly erroneous in its conclusion that Charity's employees were solely at fault in causing Oniate's injuries, and that the trial court was not manifestly erroneous in its assessments of Oniate's general damages, loss of earning capacity, and future health care costs.
This court granted Charity's writ to address the issue of whether the statutory cap on certain damages caused by the malpractice of Charity's employees applies where those employees were not employed pursuant to a written contract. Ruiz v. Oniate, 97-2412 (La.1/16/98), 707 So.2d 45. With respect to this issue, Charity argues that requiring a written employment contract to be introduced at trial in order to trigger the statute's protection afforded an individual physician acting on behalf of the state violates the broad, inclusive intent of the legislature to cover any individual acting in a professional capacity in providing health care services, by or on behalf of the state under the public medical malpractice act. In response, plaintiff asserts the language in subsection (A)(1) shows that coverage is provided only to: (1) a physician, psychologist, dentist, registered nurse, etc., (2) acting in the course and scope of his employment, and (3) pursuant to a written contract with the state or any political subdivision which specially names the health care provider or his employer. Plaintiff urges this court to adopt this reading since the MLSSA establishes provisions in derogation of common or natural rights and therefore must be strictly interpreted and not extended beyond its obvious meaning. Given our review of the legislative history of La. R.S. 40:1299.39 and the applicable rules of statutory construction, we find Charity's employees were "persons" to whom the statutory cap applied even though they were not employed pursuant to a written contract.

LAW
This court has noted that because the MLSSA limits the liability of certain health care providers in derogation of the general rights of tort victims, any ambiguities in the Act should be strictly construed against coverage. Kelty v. Brumfield, 93-1142, p. 9 (La.2/25/94), 633 So.2d 1210, 1216; Hutchinson v. Patel, 93-2156, p. 5 (La.5/23/94), 637 So.2d 415, 420 (holding similarly with respect to the Medical Malpractice Act). See also Branch v. Willis-Knighton Med. Ctr., 92-3086, p. 14 (La.4/28/94), 636 So.2d 211, 217; Rodriguez v. Louisiana Med. Mut. Ins. Co., 618 So.2d 390, 394 (La.1993); Galloway v. Baton Rouge Gen. Hosp., 602 So.2d 1003, 1005 (La.1992); Sewell v. Doctors Hosp., 600 So.2d 577, 578 (La.1992). On the other hand, legislation is a solemn expression of legislative will, and therefore, interpretation of a law involves primarily the search for the legislature's intent. La. C.C. art. 1; Hutchinson, 93-2156 at p. 5, 637 So.2d at 420; Touchard v. Williams, 617 So.2d 885, 888 (La.1993); Backhus v. Transit Cas. Co., 549 So.2d 283, 289 (La.1989); Keelen v. State Dept. of Culture and Recreation, 463 So.2d 1287, 1289 (La.1985). Hence, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9; Hutchinson, 93-2156 at p. 5, 637 So.2d at 420. When the language of the law is susceptible of different meanings, however, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. arts 10 and 12; Hutchinson, 93-2156 at p. 5, 637 So.2d at 420. Additionally, laws on the same subject matter must be interpreted in reference to each other. La. C.C. art. 13; Hutchinson, 93-2156 at p. 6, 637 So.2d at 420. If application of the foregoing rules of interpretation fails to illuminate definitively the legislature's intent, only *445 then should the rule of strict construction apply to the interpretation of laws in derogation of common rights such as the MLSSA. See Hutchinson, 93-2156 at p. 6, 637 So.2d at 421. See also Branch, 92-3086 at p. 14, 636 So.2d at 217; Rodriguez, 618 So.2d at 394; Touchard, 617 So.2d at 892.

DISCUSSION
In 1976, the legislature passed a law which specified a person providing health care services on behalf of the state would not be obligated to pay damages for his malpractice. Acts 1976, No. 66. Instead, a suit for that person's malpractice could be instituted solely against the state and defended by the state, with the state paying any damages awarded in the suit. "Person" was defined as:
[A] physician, dentist, registered nurse, licensed practical nurse, pharmacist, optometrist, podiatrist, physical therapist, laboratory or x-ray technician, acting in the course and scope of his employment, health care facility staff appointment, or assignment for or on behalf of the state, or a resident, intern, trainee or a student of any discipline listed herein who is assigned as a part of his prescribed training when acting in the course and scope of his employment, staff appointment, or assignment for or on behalf of the state.
An amendment to this law contained in Acts 1976, No. 660 deleted laboratory and x-ray technicians, and trainees from the definition of "Person." The amendment also changed the provision that the malpractice suit must be instituted solely against the state and instead allowed damages to be awarded against a covered "Person," while limiting his liability to $500,000 and providing the state shall pay that judgment subject to the $500,000 limitation.
In Act 628 of 1977, the definition of "Person" was again changed, this time to provide that the covered "persons" performing services on behalf of the state would be covered regardless of where the services were performed. Additionally, "Person" was broadened to include those previously enumerated professionals who provided voluntary professional services in a health care facility or institution on behalf of the state. As amended, the definition of "Person" then read:
[A] physician, dentist, registered nurse, licensed practical nurse, pharmacist, optometrist, podiatrist, physical therapist, acting in the course and scope of his employment, health care facility staff appointment, or assignment for or on behalf of the state, without regard to where the services are performed, or providing voluntary professional services in a health care facility or institution for or on behalf of the state, or a resident, intern, or a student of any discipline, listed herein who is assigned as a part of his prescribed training when acting in the course and scope of his assigned training or staff appointment, without regard to where the services are performed.
In Act 611 of 1978 the definition of "Person" was changed to a version more similar to the 1988 version of the statute which is applicable to the instant case. The title of this act stated its purpose was "to provide for the inclusion of certain persons as health care providers." (Emphasis added.) After this amendment, La. R.S. 40:1299.39(A)(1) read:
(1) "Person" means any individual acting in a professional capacity in providing health care services, by or on behalf of the state, and shall include but not be limited to a physician, psychologist, dentist, registered nurse, licensed practical nurse, pharmacist, optometrist, podiatrist, physical therapist, laboratory or x-ray technician, acting within the course and scope of his employment, pursuant to a contract with the Department of Health and Human Resources, which contract specially names that health care provider, for professional services or to render other health care services, health care facility staff appointment, or assignment for or on behalf of the state, whether he receives compensation or not, without regard to where the services are performed, or performing voluntary professional services in a health care facility or institution for or on behalf of the state, or a resident, intern, or student, of any discipline listed herein who is assigned as a part of his prescribed training when *446 acting within the course and scope of his assigned training or staff appointment, without regard to where the services are performed.
A comparison of the language of the 1978 version to the previous version reveals significant changes in the phraseology used to define "Persons" covered by the Act. Notably, the amended version added the general introductory language which defined a "Person" as "any individual" professionally providing health care services by or on behalf of the state. This broadened the scope of coverage which previously was limited to an exclusive list of physicians, dentists, registered nurses, licensed practical nurses, pharmacists, optometrists, podiatrists and physical therapists. Act 611 also added the curious language at issue in our case, referring to a contract with the Department of Health and Human Resources that specially names the health care provider and is for professional services or other health care services.
There is no indication in the legislative history of this particular amendment why the language at issue in this case was added, nor does there appear to be any reported case during this time which may have been the impetus for the change. The original version of House Bill No. 1311 that ultimately became Act 611 of 1978 defined "Person" in pertinent part as follows:
(1) "Person" means any individual acting in a professional capacity in providing health care services, by or on behalf of the state, and shall include but not be limited to a physician, dentist, registered nurse, licensed practical nurse, pharmacist, optometrist, podiatrist, physical therapist, laboratory or x-ray technician, acting within the course and scope of his employment, pursuant to a contract to render health care services, health care facility staff appointment, or assignment for or on behalf of the state....
(Emphasis added). In Committee, psychologists were added to the list of "Persons" included in the Act and other changes, not pertinent here, were made.[2] On June 20, 1978, the House took up HB 1311 on Third Reading and Final Passage and it was then that a floor amendment added the language requiring that the contract specially name the health care provider.
The Senate Committee that considered the Bill made no amendments to the definition of "Person." The minutes of the Senate Committee meetings indicate "[t]he administration [of the Act] will provide medical malpractice insurance for those state employed physicians,"[3] and "[t]he legislation has no relation to the [private] malpractice bill, and deals only with employees of the state, to provide them protection against malpractice suits for nonintentional acts committed while performing their duties for the state."[4] This indicates the Act was understood to cover those health care providers employed by the state who committed malpractice while providing health care services on behalf of the state and reveals no intent that it apply only to those providers who had a specific written contract of employment with the state.
The Bill was enacted by the legislature and approved by the governor on July 12, 1978, in the form noted above.
This court has previously recognized that the legislative aim throughout the above-related series of Acts was to "afford or enhance protection for physicians and other persons providing health care to patients on behalf of the state." Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094, 1102 (La.1985) (on rehearing). In fact, we have said the primary objective of the statute is to entice professionals to provide health care to patients on behalf of the state by *447 protecting them against malpractice judgments. Sibley, 477 So.2d at 1103.
The next amendment to La. R.S. 40:1299.39(A)(1) was made by Act 130 of 1979 which substituted "contract with the state" for "contract with the Department of Health and Human resources." In Act 851 of 1982, clinical social workers and hospital administrators were added to the list of professionals enumerated in section (A)(1). Act 141 of 1986 added ambulance services to section (A)(1), added that the enumerated health care providers could be acting pursuant to a contract with any political subdivision of the state, as well as the state, and allowed such contract to specially name either the employer of the health care provider or the health care provider. Act 965 of 1986 provided this definition of "person" would also be the definition of "health care provider."
Thus, as the MLSSA existed in January, 1988, the statutory cap applied to damages, exclusive of future medical care and related benefits, for the injury of any "patient" in any action or claim for an alleged act of malpractice. La. R.S. 40:1299.39(B). A "patient" was a natural person receiving health care from a covered "person." La. R.S. 40:1299.39(A)(3). A "person," in turn, was defined as:
[A]ny individual acting in a professional capacity in providing health care services, by or on behalf of the state, and shall include but not be limited to a physician, psychologist, dentist, registered nurse, licensed practical nurse, ambulance service, pharmacist, optometrist, podiatrist, physical therapist, laboratory or x-ray technician, clinical social worker, or hospital administrator, acting within the course and scope of his employment, pursuant to a contract with the state or any political subdivision thereof, which contract specially names that health care provider or his employer, for professional services or to render other health care services, health care facility staff appointment, or assignment for or on behalf of the state, whether he receives compensation or not, without regard to where the services are performed, or performing voluntary professional services in a health care facility or institution for or on behalf of the state, or a resident, intern, or student, of any discipline listed herein who is assigned as part of his prescribed training when acting within the course and scope of his assigned training or staff appointment, without regard to where the services are performed.
La. R.S. 40:1299.39(A)(1).[5]
As can be seen from even a cursory reading of this passage, the parties' proposed interpretations of subsection (A)(1) are only two of the multitude of possible readings which could be given this confusing definition. Because of insufficient or incorrect punctuation, it is difficult to tell what the numerous clauses and phrases in subsection (A)(1) precisely modify, and we accordingly find the law to be ambiguous. Finding the definition of "Person" ambiguous, we must therefore seek to ascertain the legislature's intent in light of the context of the definition, the text of the Act as a whole, and the purpose of the Act.
Given the prior discussion of the evolution of this statutory provision, we find the *448 only reasonable interpretation of this statute which would not lead to absurd consequences is that all persons providing health care services in a professional capacity by or on behalf of the state are covered "persons" under subsection (A)(1) as it existed in January of 1988 regardless of whether they or their employer had a written employment contract with the state or one of its political subdivisions. The statute states that these individuals "shall include but not be limited to " certain professionals acting pursuant to a contract. We find that the legislature certainly did not intend to limit the scope of subsection (A)(1) to only those employees with whom the state had a written contract. This interpretation flies in the face of the clear legislative intent to expand and broaden the scope of this definition and contravenes the entire purpose of the MLSSA. Rather, the statute should be read to allow for the inclusion of health care providers under contract as well as those employees employed by the state.
As originally enacted in Act 66 of 1976, certain enumerated professionals who worked for the state fell under the definition of "person." The presence or absence of a written contract was not mentioned as a factor. A later amendment qualified that these persons would be covered regardless of where the services were performed, and, more importantly, that they would be covered even when they were providing voluntary professional services on behalf of the state.
In 1978, the legislature broadened the exclusive enumerated list of professionals to include any individual acting in a professional capacity in providing health care services for the state, which group of persons "shall include but not be limited to" a given list of medical professionals acting "pursuant to a contract." The title of Act 161 of 1978 indicated the purpose of this particular Act was "to provide for the inclusion of certain persons as health care providers," not to exclude previously included persons. Senate Committee minutes indicated the Act was to "provide medical malpractice insurance for those state employed physicians" and dealt with "employees of the state" in order to "provide them protection against malpractice suits for nonintentional acts committed while performing their duties for the state." These comments, although certainly not determinative of the issue, nevertheless fail to evince any intent of the legislature to exclude, by its adoption of the "contract" language, previously included noncontract employees. Rather, the title and minutes continue to recognize, as this court did in Sibley, that the entire purpose of the MLSSA was to entice professionals to provide health care to patients on behalf of the state by protecting them against malpractice judgments. This purpose would not be served if the Act's coverage was restricted only to those persons who had actual written contracts with the state as opposed to employment without a written contract.
Plaintiffs would have us find that with the inclusion of the "contract" language in 1978, the legislature intended to exclude from the coverage of the Act those persons who provided medical services on behalf of the state but who did not have a written contract with the state to do soemployees who had been covered under the MLSSA from its inception. As explained, the title to Act 611 of 1978 and the Senate Committee minutes show otherwise. Rather, it seems the intent behind the addition of the "contract" language as originally inserted with Act 611 of 1978 and as amended in 1979 and 1986 was to insure that medical professionals who personally or through their private employers had contracted with the state as independent contractors to provide medical services on behalf of the state would also be extended the benefits of the MLSSA since it was possibly questionable whether these independent contractors who may or may not have been employed by private companies would have been considered "employees" of the state health care facility. This interpretation is fully supported by the language added in Act 141 of 1986 which provided the contract could be between the state or its political subdivision and the health care provider himself of "his employer." Obviously, the addition of "his employer" contemplates a situation where a hospital has contracted with a medical professional group of some type, i.e., an anesthesiologist group or an x-ray technician *449 group, for the group's employees to provide services to the hospital on a contract basis.
That the "contract" clause is not meant to exclude traditional hospital employees working without a written contract but was merely intended to evidence an intent to include persons who provided health care services on behalf of the state pursuant to such a contract is further supported by the fact that any health care professional providing health care services on behalf of the state on a voluntary basis remains clearly covered by the Act. It would be nonsensical to find that employees paid by the health care facility acting within the course and scope of their employment but without a written contract are not covered "persons," and don't receive the benefit of this "insurance," but that non-employees voluntarily providing the same services are so covered. Given that the recognized primary purpose of the MLSSA was to attract qualified professionals to provide health care services on behalf of the state by offering them primary malpractice insurance, we can see no legitimate reason for the legislature to offer this insurance to professionals who volunteer to work at state facilities and to professionals who work at these facilities pursuant to a contract between the state or a political subdivision and the professional or his employer, but not also to the direct, non-contract employees of the state health care facility.
Consequently, we find Charity's employees, for whom it is vicariously liable, were covered "persons" under the Act and entitled to the benefit of this statutory cap on damages caused by their malpractice. The lower courts found Charity's liability in this case was solely vicarious. This finding has not been appealed, nor does it appear to be incorrect. Therefore, because Charity has satisfied other requirements for coverage, we conclude Charity is entitled to the benefit of the cap on malpractice damages, exclusive of future medical care and related benefits.
Plaintiff additionally argues the imposition of the cap is unconstitutional; however, the lower courts pretermitted this issue, finding the cap was inapplicable to the instant situation. Because we find otherwise, we remand this case to the trial court for further proceedings consistent with this opinion.
Finally, Charity raises other issues regarding allocation of fault and excessiveness of damages awarded by the trial court. In granting the application for certiorari on the issue of the applicability of the statutory cap found in La. R.S. 40:1299.39, we did not intend to address these issues. Therefore, we will recall the writ as to these issues and deny the application insofar as they pertain to issues other than the applicability of the statutory cap. See Sanders v. Zeagler, 96-1170, p. 6 (La.1/14/97), 686 So.2d 819, 823; Ledbetter v. Concord General Corp., 95-0809, p. 8 (La.1/6/96), 665 So.2d 1166, 1171.

DECREE
For the reasons assigned, we reverse the court of appeal's finding that only employees with written employment contracts are covered "persons" under the MLSSA. With respect to all other arguments raised in Charity's application for certiorari, the writ is recalled and denied. We remand to the trial court for further proceedings consistent with this opinion.
NOTES
[*] JOHNSON, J., not on panel. See Rule IV, Part 2, Section 3.
[1] Effective September 9, 1988, Act No. 786 was enacted to explicitly include within the coverage provided in La. R.S. 40:1299.39 the state and any of its departments, offices, agencies, boards, institutions and any other state entities which may provide any kind of health care whatsoever. This amendment, affecting substantive rights, was clearly not retroactive. See Martino v. Sunrall, 619 So.2d 87 (La.App. 1 Cir.), writ denied, 621 So.2d 821 (La.1993) (holding Act 786 of 1988 is not retroactive); Hampton v. Greenfield, 576 So.2d 630 (La.App. 4 Cir.), writ denied, 581 So.2d 686 (La.1991) (refusing to apply Act 786 of 1988 retroactively). Therefore, we consider, and the parties agree, the law applicable to the instant situation is that in effect in January, 1988, when the failure to diagnose occurred.
[2] The minutes from the House Committee on Civil Law & Procedure are not enlightening as to the reasons the definition of "Person" was changed. Several doctors appeared in support of the bill, but they were concerned with adding coverage for volunteer doctors. House Committee on Civil Law & Procedure, Minutes, June 12, 1978, p. 2.
[3] Louisiana State Senate Committee on Judiciary A, Minutes of Meeting, June 27, 1978, p. 10.
[4] Louisiana State Senate Committee on Judiciary A, Minutes of Meeting, June 28, 1978, p. 4.
[5] We note that Act 965 of 1986 did not contain those changes made to the subsection by Act 141 of 1986, and instead simply referred to the pre-Act 141 definition of "Person" in making a minor change to the introductory language. Hence, at the time of the instant suit, there were two versions of La. R.S. 40:1299.39(A)(1) which were passed as the same legislative session. Where inconsistent amendments to the same statute have been adopted at the same legislative session, the court should attempt to construe the statute so as to give effect to both amendments consistent with legislative intent. Only when it is impossible to give effect to both amendments should the court allow the controlling factor to be the time of passage of the acts. State v. Piazza, 596 So.2d 817 (La.1992). See also State in Interest of Sapia, 397 So.2d 469, 473 (La. 1981); Wilkinson v. Wilkinson, 323 So.2d 120, 124 (La.1975); Marquette Cement Mfg. Co. v. Normand, 249 La. 1027, 192 So.2d 552, 553 (1966); Chappuis v. Reggie, 222 La. 35, 62 So.2d 92, 95 (1952).

Here, it is possible to construe the statute to give effect to both Act 141 and Act 965 consistent with the legislative intent. Therefore, when quoting the applicable definition of "Person" in La. R.S. 40:1299.39(A)(1), we will use the moreinclusive definition enacted in Act 141 of 1986 as providing the definition of "Person" or "health care provider" as envisioned by Act 965 of 1986.