I «WHIPPLE, J.
This matter is before us on appeal following a remand to the trial court for a determination of whether certain health care providers were qualified state health care providers pursuant to the Malpractice Liability for State Services Act, LSA-R.S. 40:1299.89 et seq., and, accordingly, whether the State of Louisiana was entitled to a credit for a settlement payment made by those health care providers to the plaintiffs herein. On remand, the trial court determined that the settling health care providers were not qualified state health care providers and, accordingly, that the State was not entitled to a credit against its obligation to plaintiffs for sums paid by the settling health care providers. Finding no error in the judgment, we affirm.
FACTS AND PROCEDURAL HISTORY
This medical malpractice suit arose out of injuries suffered by Deborah Batson while hospitalized at South Louisiana Medical Center (SLMC) in Houma, Louisiana. At the original trial of this matter, the trial court found that Batson had suffered three separate and unrelated injuries resulting from independent acts of negligence. Those three separate injuries were (1) sepsis and related injuries, (2) flexion contrac-tures and (8) decubitus ulcers. Having found three separate and unrelated injuries, the trial court further determined that a separate $500,000.00 cap on damages as set forth in LSA-R.S. 40:1299.39(F) of the Malpractice Liability for State Services Act (MLSSA) applied to each independent act of negligence causing a separate and independent injury.
Ultimately, the Louisiana Supreme Court affirmed the trial court’s finding that Batson was entitled to three separate $500,000.00 caps for her separate and independent injuries, holding that the MLSSA does not prohibit multiple statutory caps for multiple acts of negligence that produce separate hand independent damages. Batson v. South Louisiana Medical Center (Batson I), 99-0232, p. 11 (La.11/19/99), 750 So.2d 949, 957. The Supreme Court then remanded the matter to this court with instructions to “review quantum under each cap.” Batson I, 99-0232 at p. 11, 750 So.2d at 957.
On remand, this court affirmed the damage awards under each cap, finding no abuse of the trial court’s discretion in its awards. Batson v. South Louisiana Medical Center (Batson II), 98-0038R, pp. 27-28 (La.App. 1st Cir.12/22/00), 778 So.2d 54, 68-69, writ denied, 2001-0960 (La.5/11/01), 792 So.2d 740. However, in the remand of the appeal, SLMC and the State also contended for the first time that they were entitled to judgment in their favor setting forth that they owed plaintiffs nothing be *656 cause the judgment had already been fully satisfied by virtue of a settlement between plaintiffs and Robert Rowe, Leah Angelito and Medforce Physical Therapy Services, Inc. (“the physical therapy defendants”).[2] Batson II, 98-0038R at pp. 23-24, 778 So.2d at 66. SLMC and the State contended that the physical therapy defendants were qualified state health care providers and that Batson was only entitled to recover $1,500,000.00 in total damages from all qualified state health care providers, representing one cap for each claim. Thus, they contended that because the amount paid in settlement by the physical therapy defendants exceeded all three caps to which Batson was entitled, SLMC and the State had no further liability to plaintiffs. Batson II, 98-0038R at pp. 23-24, 778 So.2d at 66.
Noting that the settlement by the physical therapy defendants involved Batson’s flexion contractures claim only, this court ruled that, as a matter of |4law, there was no basis for granting SLMC and the State a credit from the settlement proceeds against the remaining two malpractice claims (ie., the claim for sepsis and related injuries and the claim for decubitus ulcers). Batson II, 98-0038R at p. 24, 778 So.2d at 66-67. However, with regard to SLMC’s and the State’s liability to plaintiffs for Batson’s flexion contractures claim, this court found that the trial court had never made a determination as to whether the physical therapy defendants were in fact qualified state health care providers who were covered by the MLSSA for the instant claim and that this determination could be made only following an evidentiary hearing at the trial court level. Batson II, 98-0038R at pp. 26-27, 778 So.2d at 67-68. Thus, we remanded the matter to the trial court for the limited purpose of determining whether SLMC and the State were entitled to a credit on the flexion contractures claim.[3] Batson II, 98-0038R at p. 27, 778 So.2d at 68.
On remand, the trial court held that: (1) Robert Rowe, Leah Angelito and Medforce Physical Therapy Services, Inc. (“Med-force”) were not state qualified health care providers under the MLSSA and (2) Rowe, Angelito and Medforce committed gross negligence and/or willful or wanton acts and that such acts excluded coverage under LSA-R.S. 40:1299.39(A)(l)(a)(iv)(ec). Thus, the trial court rendered judgment, | r,finding that the State was not entitled to any credit against its liability to plaintiffs as a result of the settlement between plaintiffs and other non-state parties, specifically the settlement payments made by St. Paul Insurance Company, on its own *657 behalf and on behalf of its insureds, Med-force, Rowe and Angelito.
From this judgment, SLMC and the State appeal, contending that the trial court erred: (1) in finding that Rowe, An-gelito and Medforce were not qualified state health care providers under the MLSSA and, consequently, that the State was not entitled to a credit against the amount the State would otherwise owe for Batson’s flexion contractures claim; and (2) in finding that Rowe and Angelito committed gross negligence and/or willful or wanton acts and that such acts exclude coverage under LSA-R.S. 40:1299.39(A)(l)(a)(iv)(cc), thus precluding the State from receiving a credit even if the physical therapy defendants were found to be qualified state health care providers.
DISCUSSION
The MLSSA affords protection with regard to liability to certain health care providers providing health care services on behalf of the State. LSA-R.S. 40:1299.39 et seq.; Ruiz v. Oniate, 97-2412, pp. 4-5 (La.5/19/98), 713 So.2d 442, 444-445. Pursuant to LSA-R.S. 40:1299.39(G), the State shall pay any damages and other costs in connection with any claim lodged against a state health care provider when the state health care provider is acting within the terms of the definition of “state health care provider” or “person covered by this Part” as provided in paragraph (1) of Subsection (A) of LSA-R.S. 40:1299.39.
In the instant case, the State argues that the physical therapy defendants were qualified “state health care providers,” and, thus, that any [(¡payment to plaintiffs for their acts of negligence inured to the benefit of the State in that plaintiffs could collect only one $500,000.00 cap for the flexion contractures claim from all qualified state health care providers.
At the time of the acts of malpractice by the physical therapy defendants, a “state health care provider” or “person covered by this Part” was defined, in pertinent part, as follows:
(ii) A person acting in a professional capacity in providing health care services, by or on behalf of the state, including, but not limited to, a ... physical therapist, ... who is either:
(aa) Acting within the course and scope of his employment pursuant to a contract with the state, which contract specially names that health care provider and designates him to render such health care services, pursuant to a staff appointment to a state hospital or other state health care facility, or pursuant to an assignment to render such health care services for or on behalf of the state, without regard to where the services are performed, whether or not he is paid for such services; or
(bb) Performing voluntary professional services in a health care facility or institution for or on behalf of the state
[[Image here]]
LSA-R.S. 40:1299.39(A)(l)(a)(ii)(aa) & (bb). Pursuant to the language of subpart (aa), a health care provider would be considered a qualified state health care provider for purposes of the MLSSA if performing health care services: (1) pursuant to a contract with the state if that contract specifically named that health care provider and designated him or her to render those services; (2) pursuant to a staff appointment to a state hospital or health care facility; or (3) pursuant to an assignment to render such services without regard to where the services were performed.
In the instant case, following an evidentiary hearing on remand, the trial court found that the physical therapy de *658 fendants were not qualified state health care providers under the facts presented. A court of appeal may not set aside a trial court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. Stobart v. State, Department of 7Transportation and Development, 617 So.2d 880, 882 (La.1993). On review, we find no error in the trial court’s resolution of this issue or in its conclusion that no credit was due the State.
The record establishes that SLMC and the State entered into a contract with Louisiana Physical Therapy and Athletic Rehabilitation, Inc. (“Louisiana Physical Therapy”), whereby Louisiana Physical Therapy provided inpatient physical therapy services at SLMC. Louisiana Physical Therapy had entered into a contract with Medforce, through which Medforce agreed to “provide licensed physical therapists on an ‘as needed’ basis” to Louisiana Physical Therapy. Rowe was an employee of Med-force. Additionally, Medforce had entered into a contract with Sunbelt Physical Therapy Services, Inc. (“Sunbelt”), through which Sunbelt agreed to provide Medforce with a physical therapist. Angelito was an employee of Sunbelt.
Although SLMC and the State contend that Rowe, Angelito and Medforce were qualified state health care providers pursuant to the contract between SLMC and Louisiana Physical Therapy, it is undisputed that none of these parties were specifically or “specially” named in the contract at issue, as clearly required by LSA-R.S. 40:1299.39(A)(l)(a)(ii)(aa).[4] As plaintiffs correctly note, by requiring that the health care provider providing services be “specially” named in the contract with the State, the MLSSA represents a compromise of competing interests. On one hand, the primary purpose of the MLSSA is to attract qualified professionals to provide health care services on behalf of the State by protecting against malpractice judgments. Ruiz, 97-2412 at pp. 7-8, 11, 713 So.2d at 446-447, 449. |8 On the other hand, by requiring that such providers be specifically identified in the contract, the MLSSA affords the State the ability to control the identity and, presumably the qualification, of those health care providers for whom the coverage under the MLSSA will be afforded and for whom the State may ultimately be liable. As such, the MLSSA, under its contract language, extends its protection, and statutorily obligates the State, only to those health care providers chosen by, and named by contract with, the State. Thus, under the facts of the instant case, the settling physical therapy defendants cannot be considered qualified under the MLSSA by virtue of a contract between the State and Louisiana Physical Therapy.
Moreover, there is no evidence in the record to show that Rowe or Angelito had been given staff appointments at SLMC or that the State had assigned them to that facility to render physical therapy services for or on behalf of the State. Nonetheless, the State now argues that the physical therapy defendants should be “deemed assigned” to SLMC by virtue of the subcontract between Louisiana Physical Therapy and Medforce and the sub-sub-contract between Medforce and Sunbelt. At the outset, we note that because the MLSSA limits the liability of certain health care providers in derogation of the general rights of tort victims, any ambiguities in the Act must be strictly construed against coverage. Ruiz, 97-2412 at p. 4, 713 So.2d at 444. There is no language in *659 LSA-R.S. 40:1299.39(A)(l)(a)(ii)(aa) providing that employees of a subcontractor, which subcontractor is not specifically named in a contract with the State, will be afforded the status of qualified “state health care provider.” Rather, the language of the statute specifically limits those qualified pursuant to contract to those individuals “specially” named in the contract with the State. In the instant case, the only party “specially” named in the contract at issue with SLMC was Louisiana Physical Therapy. Thus, strictly construing the language of this section of |9the Act, as we must, and considering the undisputed facts presented, we find no merit to the State’s argument.
As additional support for its argument that the physical therapy defendants were qualified health care providers, the State relies upon the Louisiana Supreme Court’s decision of Ruiz v. Oniate, wherein the Court held that health care providers employed by the State are qualified state health care providers under the MLSSA Ruiz, 97-2412 at p. 9, 713 So.2d at 448. In Ruiz, the question presented was whether direct employees of a state hospital, who did not have a written employment contract with the State, were covered under the MLSSA as it existed in 1988. In considering this issue, the Court detailed the evolution of the definition of persons covered under the Act and, in so doing, noted that in 1978, the MLSSA was amended to add language referring to a contract with the Department of Health and Human Resources that “specially” names the health care provider. Ruiz, 97-2412 at p. 6, 713 So.2d at 446.
In concluding that this added language did not require that such direct employees of a state hospital have a written contract with the State, the Court stated as follows:
[I]t seems the intent behind the addition of the “contract” language as originally inserted with Act 611 of 1978 and as amended in 1979 and 1986 was to insure that medical professionals who personally or through their privaite employers had contracted with the state as independent contractors to provide medical services on behalf of the state would also be extended the benefits of the MLSSA since it was possibly questionable whether these independent contractors who may or may not be employed by private companies would have been considered “employees” of the state health care facility.
Ruiz, 97-2412 at p. 10, 713 So.2d at 448 (emphasis added).
hnCiting this language from the Ruiz opinion, the State contends that the physical therapy defendants did not need written contracts with the State to attain the status of qualified state health care providers.
However, we find the facts and analysis of Ruiz to be distinguishable from the instant case. First, as mentioned above, the Court in Ruiz was faced with the question of whether direct employees of a state hospital were qualified state health care providers.[5] Ruiz, 97-2412 at p. 1, 713 So.2d at 443. In the instant case, we must address whether third parties who were not employed by the State and had not contracted with the State, their sub-contractors and employees of those sub-contractors are qualified state health care providers.
Additionally, in finding that pursuant to the “contract” language medical profes *660 sionals who contracted with the State through their private employers as independent contractors were extended coverage under the MLSSA, the Court relied upon the language added by Act 141 of 1986, which specifically provided that the contract could be between the state and the health care provider himself “or his employer.” Ruiz, 97-2412 at pp. 10-11, 713 So.2d at 448-449. However, the “or his employer” language was deleted by Act 786 of 1988. Thus, under the version of the MLSSA applicable herein, the contract with the State for medical services had to specially name the health care provider himself in order for coverage under the Act to be afforded. Accordingly, we find that Ruiz is not controlling herein.
Finally, in arguing that the physical therapy defendants were qualified state health care providers, the State relies upon a certificate of qualification, In issued by the Commissioner of Administration and listing the physical therapy defendants as qualified under the provisions of LSA-R.S. 40:1299.39.1. We agree that a certificate of qualification from the Louisiana Commissioner of Administration, certifying that a health care provider is qualified under the provisions of LSA-R.S. 40:1299.39, can serve as prima facie evidence of state employment. See Holt v. Stallworth, 594 So.2d 1082, 1084 (La.App. 4th Cir.1992).
We note that the certificate of qualification was issued on December 22, 1995, by the Division of Administration at the request of counsel for the physical therapy defendants over four years after the acts of malpractice by these defendants. Despite the issuance of this certificate, the physical therapy defendants nonetheless thereafter entered into a settlement with plaintiffs, agreeing to pay plaintiffs a minimum of $750,000.00, more than their liability would have been as qualified state health care providers. While not solely determinative of the issue of coverage, clearly, these physical therapy defendants were not acting under any belief that the issuance of the certificate of qualification established that they were in fact qualified state health care providers.
Moreover, we note that the certificate of qualification was signed by Dianna Schenk, an “administrative specialist 1” with the Division of Administration. With regard to the circumstances prompting the issuance of the certificate and her determination of whether the physical therapy defendants were in fact qualified under the MLSSA as state health care providers, Schenk testified that after reviewing the contract and subcontracts at issue, she merely telephoned an unidentified individual at SLMC and requested that the individual orally advise her whether these defendants were state health care providers at the time these incidents occurred. Schenk | ^acknowledged that she has no legal training; nonetheless, she individually made the decision to issue the certificate of qualification to the physical therapy defendants. Under these circumstances, we conclude that the certificate of qualification is of little value to our analysis herein, and we find no manifest error in the trial court’s implicit finding that plaintiffs had sufficiently rebutted any prima facie evidence of qualification under the MLSSA.
Considering the foregoing, we find no manifest error in the trial court’s determination that the physical therapy defendants were not qualified state health care providers as defined in LSA-R.S. 40:1299.39(A) and, consequently, that the State is not entitled to any credit against its liability to plaintiffs by virtue of the settlement between plaintiffs and the physical therapy defendants. Given our ruling on this issue, we pretermit consideration of the second assignment of error raised by the State and SLMC, contending *661 that the trial court erred in its alternative ruling that, even if state health care providers under the MLSSA, the physical therapy defendants were not entitled to the protection of the Act because they were grossly negligent herein.[6]
CONCLUSION
For the above and foregoing reasons, the November 2, 2001 judgment of the trial court, decreeing that the State is not entitled to a credit against its liability to plaintiffs as the result of the settlement payments made by St. |13Paul Insurance Company on behalf of Medforce, Inc., Robert Rowe and Leah Angelito, is affirmed.[7]
AFFIRMED.

. Plaintiffs were paid $1,636,949.91 pursuant to their settlement agreement with these defendants. Batson II, 98-0038R at p. 23 n. 6, 778 So.2d at 66 n. 6.

. This court also held that if, in fact, the trial court determined that the physical therapy defendants were state health care providers, then the State would be relieved of its liability to plaintiffs for the flexion contractures claim alone, as Batson would have already received the statutory cap for that claim from a qualified state health care provider. However, we further held that if the physical therapy defendants were found not to be qualified stated health care providers, no reduction would be warranted. This finding was based on the trial court’s award wherein it had specifically held that, even after reducing the flexion cont-racture award by the percentage of fault attributable to the settling physical therapy defendants, the portion of Batson’s general damages for which SLMC and the State would be liable exceeded $500,000.00. Thus, the trial court had already taken into consideration a reduction of SLMC's and the State's liability to plaintiffs by the proportionate share of fault of the physical therapy defendants. Batson II, 98-0038R at p. 27 n. 8, 778 So.2d at 68 n. 8.

. The issues presented in this appeal are limited to the contract between SLMC and Louisiana Physical Therapy.

. Through amendments to the MLSSA subsequent to the version discussed in Ruiz, employees of state hospitals and facilities were specifically included within the coverage of the Act. See LSA-R.S. 40:1299.39(A)(l)(a)(i).

. In this assignment of error, SLMC and the State argue that the trial court should not have considered whether the physical therapy defendants were grossly negligent because plaintiffs had not alleged gross negligence in their original pleadings at the trial court level. Without commenting on the applicability of the gross negligence exception to the facts as established herein, which was not raised by defendants, we note that the issue of gross negligence became relevant only when the State and SLMC raised the issue of extin-guishment of their debt to plaintiffs or entitlement to a credit by virtue of plaintiffs’ settlement with the physical therapy defendants. The State and SLMC first raised this issue in the appellate court in original appeal of this matter after remand from the Supreme Court. See Batson II, 98-0038R at pp. 23-24, 778 So.2d at 66.

. This court has been advised by the Thirty-Second Judicial District Court that due to a previous overpayment of costs by the State, no payment for costs is currently due. Thus, we decline to assess any additional costs.