645 So.2d 1301 (1994)
In re Billy Gene VIVIANO, Applying for Medical Review Panel.
Billy Gene VIVIANO, et al.
v.
Charles E. MOAN, Ph.D and ABC Insurance Company.
Billy Gene VIVIANO, et al.
v.
Dudley M. STEWART, Jr., M.D., et al.
Nos. 93-CA-1368 to 93-CA-1370.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1994.
Writ Denied February 17, 1995.
*1302 Joseph C. Bartels, Law Offices of Joseph Bartels, and Victoria Lennox Bartels, Wessel, Bartels & Ciaccio, New Orleans, for plaintiffs/appellants.
Charles A. Boggs, Terry B. Deffes, Boggs, Loehn & Rodrigue, New Orleans, for defendants/appellees, Dudley Stewart, M.D. and St. Paul Fire & Marine Ins. Co.
H. Martin Hunley Jr., Deborah I. Schroeder, Lemle & Kelleher, New Orleans, for defendants/appellees, Charles E. Moan, Ph.D and St. Paul Fire & Marine Ins. Co.
C.T. Williams, Jr., J. Elliott Baker, Blue Williams, Metairie, amicus curiae, Louisiana Psychiatric Medical Ass'n.
Before BARRY, BYRNES and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Plaintiffs, Billy Gene Viviano individually and on behalf of his three minor children, Billy Gene Viviano Jr., Dominick Joseph Viviano and Gina Marie Viviano, and his wife Susan Viviano, appeal from a trial court judgment in favor of defendants Charles E. Moan, Ph.D and Dr. Dudley M. Stewart Jr. We now affirm.
Billy Gene Viviano ("Viviano") was injured in June 1982 while working on an offshore oil platform in Saudi Arabia. A lawsuit was filed on his behalf in the United States District Court for the Eastern District of Louisiana. Following a four-day trial in March 1985, a jury awarded him 1.225 million dollars. After dismissing the jury Judge Veronica Wicker granted a judgment notwithstanding the verdict and ordered a new trial *1303 to begin on December 16, 1985. In the summer of 1985 Viviano was referred by his attorneys to Dr. Charles E. Moan, a psychologist, for treatment of depression. Dr. Moan began treating Viviano and referred him to Dr. Dudley M. Stewart, a psychiatrist, for treatment. During the course of treatment Viviano began making threats on the life of Judge Veronica Wicker, his attorney Benjamin Birdsall and an attorney for one of the defendants in his federal civil suit. The threats escalated and Drs. Moan and Stewart eventually notified Judge Wicker of the threats. Viviano was arrested on November 20, 1985 by federal agents for assault on a federal officer. He eventually pled guilty to contempt of court and, as part of the plea agreement, voluntarily committed himself to a mental hospital. Viviano, individually and on behalf of his three minor children, and his wife, subsequently filed the lawsuits which are the subject of this appeal.
During the course of the trial a juror fainted in a courtroom hallway. Dr. Stewart rendered aid to this juror in the presence of several other jurors. The following week the trial judge replaced this juror with an alternate. Plaintiffs' counsel requested that the trial judge call each of the remaining jurors into his chambers and speak with them individually "to assure that they will not allow this incident to unfairly prejudice them in favor of Dr. Stewart." The trial judge declined.
At the close of the presentation of the evidence the trial court denied the requests of all parties to give special charges to the jury. Plaintiffs had submitted several proposed special jury charges and interrogatories characterizing their claims against Dr. Moan and Dr. Stewart as claims for invasion of privacy. The trial court's instructions to the jury and its interrogatories characterized plaintiffs claim as being one for negligence and malpractice for defendants' failure to exercise that degree of care ordinarily practiced by psychologists or psychiatrists in disclosing information pertaining to the threats. Plaintiffs objected to the failure of the trial court to charge the jury as to invasion of privacy claims.
Following deliberations the jury found that neither Dr. Moan nor Dr. Stewart lacked the degree of skill possessed by a psychologist or psychiatrist, respectively, or failed to exercise the degree of care ordinarily practiced by a psychologist or psychiatrist, respectively, in their treatment of Billy Gene Viviano. The jury further found that neither Dr. Moan nor Dr. Stewart failed to exercise the degree of care ordinarily practiced by psychologists or psychiatrists, respectively, in disclosing information pertaining to the threats made against other persons made by Billy Gene Viviano during the course of his therapy sessions with them.
On appeal plaintiffs raise four assignments of error: (1) The trial court's refusal to determine whether viewing Dr. Stewart's rendering of aid to a stricken juror prejudiced them in his favor; (2) The trial court erred in refusing to instruct the jury on provisions of La.R.S. 28:1, et seq., the Louisiana Mental Health Law, pertaining to the involuntary commitment of persons to mental hospitals; (3) The trial court erred in failing to instruct the jury or submit to it their invasion of privacy claims; and (4) The findings of the jury with respect to negligence and malpractice on the part of Dr. Moan and Dr. Stewart were manifestly erroneous.

AID TO STRICKEN JUROR
Plaintiffs claim that the trial court erred in failing to question the jurors regarding whether he or she would be prejudiced in favor of Dr. Stewart after seeing him render aid to a juror who fainted in a hallway of the courthouse. The record reflects that when court reconvened following this incident the trial judge advised the parties and the jury that the juror would not be returning and that an alternate juror would take her place. The trial judge also stated that he wanted to "thank everyone" who rendered aid to the stricken juror. Outside the presence of the jury plaintiffs' counsel asked that the court question each juror in chambers "to assure that they will not allow this incident to unfairly prejudice them in favor of Dr. Stewart." Counsel was only aware of four jurors who were present when Dr. Stewart helped a *1304 deputy sheriff turn the woman on her side and took her pulse.
Counsel for Dr. Stewart and Dr. Moan opposed plaintiffs' request, arguing that such a procedure would have the effect of blowing the incident out of proportion. Dr. Stewart's counsel suggested that it might have the effect of causing jurors to act adverse to Dr. Stewart. The trial court stated that it would not "insult the integrity" of the jury by asking if witnessing those events would affect their judgment in any way. The trial court also stated that it did not want to emphasize the incident. Counsel for plaintiffs objected, but specifically stated that they were not asking for a mistrial.
A trial court is vested with great discretion in conducting trial in a manner which it determines will be conducive to justice. First National Bank v. Carr, 572 So.2d 1106 (La.App. 1st Cir.1990); La.C.C.P. art. 1631. The record does not reflect that the trial judge abused its discretion in declining to bring each individual juror (plaintiffs could only identify four who had witnessed the incident) into his chambers and question them as to whether they would be prejudiced in favor of Dr. Stewart because they witnessed him render aid to the fallen juror.

INVOLUNTARY COMMITMENT STATUTES
Plaintiffs attempted to establish that Dr. Stewart and Dr. Moan should have sought to involuntarily commit Billy Gene Viviano to a mental hospital rather than warn Judge Wicker of the threats. A number of expert mental health witnesses testified concerning the procedures in Louisiana relative to involuntary commitments. The trial court denied plaintiffs' request to instruct the jury as to the portions of La.R.S. 28:1, et seq. relevant to involuntary commitment procedures. While not required to give the precise instructions requested by a party, a trial judge has a duty to charge the jury as to the law applicable to the case, along with a responsibility to reduce the possibility of confusion. Pullen v. Ziegler, 562 So.2d 1093 (La. App. 4th Cir.1990), writ denied, 567 So.2d 106 (La.1990).
In the instant case, expert witnesses presented by both plaintiffs and defendants were extensively questioned on direct and cross examination as to the feasibility of involuntarily committing Viviano. La.R.S. 28:53(B) provides for involuntary commitment by the execution of an emergency certificate by a physician. La.R.S. 28:53(B)(2) provides that the emergency certificate "shall state" the objective findings of the physician supporting his conclusion that the person to be committed is "dangerous to self or others or is gravely disabled as a result of substance abuse or mental illness." Both Dr. Moan and Dr. Stewart diagnosed Viviano as suffering from depression, a mental illness. But they and other psychiatrists who testified felt that Viviano's repeated threats to murder Judge Wicker grew not out of his depression but out of pure rage and anger, the result of her vacating the $1.225 million judgment that had been rendered in his favor. The opinions of plaintiffs' experts conflicted with those of defendants' witnesses in this area.
Introduced into evidence was a Physician's Emergency Certificate (PEC) from the former Louisiana Department of Health and Human Resources, Office of Mental Health, one part of which required the physician to state:
I am of the opinion that the above person named is in need of immediate psychiatric treatment in a treatment facility because he/she is seriously mentally ill or suffering from substance abuse so that he/she is: (check where appropriate in both 1 & 2)
1. Dangerous to Self __ Dangerous to Others __ Gravely Disabled __
2. Unwilling __ Unable __ to seek voluntary admission.
While La.R.S. 28:53(B) appears to provide that a physician may issue the PEC if he determines that the mentally ill person or person suffering from substance abuse is in need of immediate medical treatment in a medical facility simply because he is dangerous to self or others or is gravely disabled, La.R.S. 28:53(B)(2) mandates that the physician state in the PEC that the dangerousness is "a result of substance abuse or mental illness" and the official PEC reflects this. The trial court may have felt that charging *1305 the jury as to a provision which was seemingly in conflict with the requirements of the PEC would only have confused the jury. We find no error in the trial court's declining to charge the jury as to the specific language of La.R.S. 28:53(B).
La.R.S. 28:53(G)(2) provides for continued involuntary confinement through the issuance of a Coroner's Emergency Certificate (CEC) by a parish coroner who must make the same representations as a physician does in the PEC. The coroner may also issue the initial emergency certificate. A CEC introduced into evidence contains language identical to the language in the PEC, linking the mental illness or substance abuse to the dangerousness to self or others. For the reasons explained above, we find no error in the trial court's refusal to charge the jury with this portion of the statute.
La.R.S. 28:53.2 provides for the issuance of an Order for Protective Custody (OPC) by a parish coroner or judge upon the execution of a statement by a peace officer "or other credible person." Defendants introduced an OPC into evidence. La.R.S. 28:53.2 allows the issuance of an OPC upon the making of a statement that "the person is mentally ill or suffering from substance abuse and is in need of immediate treatment to protect the person or others from physical harm." Unlike the PEC and CEC, neither the OPC nor the statute itself specifically link the mental illness or substance to the dangerousness. This may be because it is possible for a non-medical person, a judge, to issue the OPC on the request of a non-medical person. A non-medical person generally would not be qualified to make this type of judgment.
Plaintiffs barely touched on this method of involuntary commitment at trial. Virtually all of the testimony on involuntary commitment came from medical expert witnesses, mainly psychiatrists. Naturally, their testimony focused on the PEC which would be used by physicians such as defendant Dr. Stewart. Plaintiffs do not argue La.R.S. 28:53.2 in their brief on appeal and we find no error in the trial court's failure to instruct the jury as to this statute.
Several witnesses attached significance to the immediacy or imminence of the threats. Plaintiffs argue that instructions as to the statutes in question would have shown that there was no requirement that the threat be immediate before the person could be involuntarily hospitalized and would have aided the jury in evaluating the credibility of the defendants and other witnesses. While the statutes do not mention those words, La.R.S. 28.2(3) defines "dangerous to others" as:
[T]he condition of a person whose behavior or significant threats support a reasonable expectation that there is a substantial risk that he will inflict physical harm upon another person in the near future. (Emphasis added).
The PEC, CEC and OPC involuntary hospitalization forms do not require a statement that the dangerousness to self or others need be imminent, immediate or even "in the near future." These forms were admitted into evidence and were available to the jury. The trial court's failure to instruct the jury as to the statutory provisions, including the definition of the term "dangerous to others," may have actually worked to the advantage of plaintiffs because a reasonable juror possibly could have interpreted the phrase "in the near future" to mean imminent or immediate. Considering these factors, we are unable to say that the trial court committed reversible error in failing to give the jury the statutory definition of the "dangerous to others."
We find no merit to the argument that the trial court committed reversible error in failing to instruct the jury with the relevant provisions of La.R.S. 28:1 et seq.

INVASION OF PRIVACY
Plaintiffs claim the trial court erred in failing to instruct the jury on a cause of action for invasion of privacy. The trial court charged the jury as to theories of malpractice and negligence. La.C.C.P. art. 1793 provides that a party may not assign as error the failure of the trial court to give an instruction unless the party states "specifically the matter to which he objects and the grounds of his objection." In the instant case counsel for plaintiff objected to the failure to give the invasion of privacy charge stating, "because of the way the claim is *1306 stated that we feel it should have been stated as an actionable invasion of privacy rather than a malpractice claim and a failure to meet the standard of care."
Assuming for the sake of argument that this explanation adequately comports with the requirements of La.C.C.P. art. 1793, defendants point out that in their petitions plaintiffs characterize their causes of action as being in "negligence and malpractice." Nevertheless, as long as facts constituting a claim are alleged, a party may be granted any relief to which he may be entitled under the pleadings and the evidence. First South Production Credit Association v. Georgia-Pacific, 585 So.2d 545 (La.1991); Roberson v. Provident House, 576 So.2d 992 (La.1991).
A cause of action for invasion of privacy lies under La.C.C. art. 2315 for, among other acts, unreasonable disclosure of embarrassing private facts. Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386 (La.1979); Carr v. City of New Orleans, 622 So.2d 819 (La.App. 4th Cir.1993), writ denied, 629 So.2d 404 (La.1993). An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest. Jaubert, 375 So.2d at 1389.
In their petition plaintiffs set forth facts alleging that Drs. Stewart and Moan revealed privileged communications to Judge Wicker and the FBI concerning the threats and that they suffered injury due, in part, to those acts on the part of the physicians. Evidence was adduced at trial pertaining to the actions of Drs. Stewart and Moan in revealing the threats and other related information. Considering the allegations of fact contained in plaintiffs' petitions in a light most favorable to them, we find they alleged that the revealing of the threats and other information was unreasonable. The expert testimony was directed to whether or not revealing the threats fell below the applicable standard of care for psychiatrists and psychologists in Louisiana. Such evidence goes directly to the crucial and decisive issue of reasonableness insofar as an action for invasion of privacy. We believe plaintiffs adequately set forth sufficient facts to allege an action for invasion of privacy and that the issues relevant to that cause of action were adequately addressed by defendants so that they are not prejudiced by consideration of the invasion of privacy claim.
We find that the trial court should have instructed the jury as to a cause of action for invasion of privacy as requested by plaintiffs. Pursuant to Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975), we will review the evidence de novo as to the claim for invasion of privacy.
Considerable and conflicting evidence was adduced at trial concerning the actions of Drs. Stewart and Moan in notifying Judge Wicker and an attorney for a defendant in the pending civil suit of the death threats. The evidence shows that both Dr. Stewart and Dr. Moan agonized over what to do concerning the threats made by Viviano. Dr. Stewart repeatedly sought the advice of a Louisiana attorney representing the Louisiana State Medical Society who advised him not only that he could legally reveal the threats, but that he had an affirmative duty to warn of the threats. That attorney based his advice largely on a California case, Tarasoff v. Regents of the University of California, 17 Cal.3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 (1976), in which the court recognized a cause of action against a therapist for his failure to warn a potential victim of a threat made against her by one of his patients. This court has recognized that cause of action. Hines v. Bick, 566 So.2d 455 (La.App. 4th Cir.1990), writ denied, 571 So.2d 648 (La.1990).[1]
Drs. Moan and Stewart both stated that the level of Viviano's threats against Judge Wicker and others, but particularly Judge Wicker, had increased since they had begun *1307 to treat him in late August and mid-September, respectively. Viviano reported that he knew where Judge Wicker lived, that he had looked into the windows of her residence at night, that he knew her jogging schedule and where she parked her car. He also reported that he had a gun.[2] In the letter he finally wrote to Judge Wicker on November 19, 1985, Dr. Stewart stated that "I fully believe that he intends to follow through on his threats." Dr. Wallace Tomlinson, an expert psychiatrist, testified that, based on the information he had, it was his opinion that Judge Wicker was in imminent danger. One of plaintiffs' main arguments is that Dr. Stewart should have involuntarily committed Viviano to protect Judge Wicker, i.e., he's locked up and he can't get to her to kill her. Dr. Tomlinson testified that in the past he had involuntarily committed patients and they had been released without his being informed. Evidence indicated that even if hospitalized Viviano might have obtained his release. Dr. Tomlinson testified that had Viviano been involuntarily committed, gotten out and murdered Judge Wicker, and Dr. Stewart had not warned her of the potential threat, the failure to warn would have been a breach of the applicable standard of care.
Plaintiffs' psychiatric experts basically testified that the threats were not properly evaluated for seriousness and/or that Dr. Stewart should have involuntarily committed Viviano instead of warning Judge Wicker.
Dr. Moan testified that he wrote his letter warning Judge Wicker of the threats on November 20, 1985, after he learned that Viviano had been arrested by the FBI. Dr. Moan felt that the arrest might precipitate Viviano carrying out the threats and he did not know how long Viviano would be in custody. He and Dr. Stewart communicated regularly about Viviano's case and had discussed involuntary commitment. Dr. Moan felt that his duty to warn would not have been obviated had Viviano been hospitalized. Dr. Judith Feldman, an expert psychologist, testified that writing the letter to Judge Wicker after Viviano's arrest notifying her of the threats was proper, within the applicable standard of care, within the standards and guidelines of the Louisiana and American Psychological Associations, and that she would have done the same thing. She said hospitalization of Viviano would not necessarily have relieved Dr. Moan of his duty to warn Judge Wicker.
Plaintiffs' expert psychologist Dr. Beverly Howze testified that there would have been no need for Dr. Moan to warn Judge Wicker after Dr. Stewart had already done so. However, she did note that in his letter Dr. Moan also informed Judge Wicker that he felt upcoming trial stressors might precipitate a reaction by Viviano. Dr. Howze noted that this was an additional warning that had not been in Dr. Stewart's letter. Dr. Howze admitted that ultimately it is the responsibility of the treating psychologist to decide when a warning is necessary.
Considering all of the record evidence in this case, we find that the actions of Dr. Stewart and Dr. Moan in disclosing confidential information concerning Viviano's threats, when balanced against Viviano's privacy interests, were reasonable. Therefore, we find no liability on their part for invasion of privacy.

NEGLIGENCE AND/OR MALPRACTICE
The jury found that neither Dr. Stewart nor Dr. Moan lacked the degree of knowledge or skill possessed by a psychiatrist or psychologist, respectively, nor failed to exercise the degree of care ordinarily practiced by same in either their treatment of Billy Gene Viviano or in their revealing confidential information related to the threats.
Besides the evidence and issues previously referred to concerning the warnings by Drs. Moan and Stewart, plaintiffs also sought to show that the treatment received by Viviano was below the applicable standard of care. Plaintiffs' expert witnesses attacked the treatment of both Dr. Moan and Dr. Stewart in numerous respects. Whether or not Drs. Stewart and Moan lacked the degree of care or skill possessed by psychiatrists or psychologists or failed to exercise the degree of care *1308 ordinarily practiced by same is a question of fact.
This court's function on appellate review is to determine whether the record evidence was sufficient for the trial court's factual findings, and whether those findings were clearly wrong. Ambrose v. New Orleans Police Dept., 639 So.2d 216 (La.1994); Canter v. Koehring Co., 283 So.2d 716 (La. 1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
There was expert testimony that the treatment of Viviano by Dr. Stewart and Dr. Moan was within the acceptable standard of care and that their actions in not involuntarily committing Viviano and warning third parties of the threats were also within the applicable standard of care. Considering all of the evidence, we are unable to say that the jury's factual findings as to negligence/malpractice were clearly wrong or manifestly erroneous.
For the foregoing reasons we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] The Louisiana Legislature recognized the problem faced by psychologists and psychiatrists in deciding whether to breach a patient's confidences and warn a potential victim or maintain the confidences and not warn. In 1986 it enacted La.R.S. 9:2800.2 which provides psychologists and psychiatrists immunity from liability for breach of confidentiality for warning a clearly identified victim of a serious threat by a patient, when the patient has the apparent intent and ability to carry out the threat.
[2] When he was arrested after leaving Dr. Stewart's office a handgun was found in Viviano's vehicle. A search of his residence revealed another handgun as well as other firearms.