695 So.2d 528 (1997)
Bradley HEBERT and Judy Hebert, et al.
v.
FEDERAL EXPRESS CORPORATION and Children's Hospital Of New Orleans.
No. 96-C-2684.
Court of Appeal of Louisiana, Fourth Circuit.
May 21, 1997.
Stephen Santillo, Lafayette, for Plaintiffs/Respondents.
Terry B. Deffes, Law Offices of Robert E. Birtel, Metairie, for Children's Hospital of New Orleans.
*529 Before BYRNES, ARMSTRONG and PLOTKIN, JJ.

ON REMAND FROM THE SUPREME COURT OF LOUISIANA
PLOTKIN, Judge.
This matter is before us on remand from the Louisiana Supreme Court. Defendant Children's Hospital seeks supervisory review of a trial court judgment denying an exception of prematurity, apparently finding that the cause of action based on damages suffered by plaintiffs Bradley and Judy Hebert as a result of the alleged mishandling of a canister containing bone marrow cells did not fall under the provisions of Louisiana's Medical Malpractice Act. Finding no error in the trial court judgment, we grant the writ, but decline relief.

Facts
The Heberts' minor son, Brennam, had been diagnosed with neuroblastoma, a cancerous tumor which had spread to his femur and pelvis, and had begun a course of treatment at Children's Hospital in February of 1995. That treatment included surgery to remove the tumor and chemotherapy, as well as a proposed bone marrow harvest and reimplantation. The Heberts' allegations of negligence relate to the reimplantation procedure.
According the Heberts' petition, bone marrow cells were harvested from the child at Children's Hospital. The next step in the procedure was to "purge" the cells of any cancer. Because Children's Hospital was not equipped to "purge" the cells, the cells were shipped to a university hospital in Florida, where the purging occurred. The Florida facility repackaged the cells and shipped the frozen cells, contained in a cylinder surrounded by liquid nitrogen and then a canister, via Federal Express to Children's Hospital. When Children's Hospital employees ultimately opened the canister and cylinder, they discovered that the canister had been damaged. As a result of that damage the cells had thawed and could not be used for reimplantation into the Heberts' son. The alleged damages suffered are associated with repeating the harvesting procedure and other additional treatment.
In filing suit, the Heberts named both Federal Express and Children's Hospital as defendants. Children's Hospital responded with an exception of prematurity, alleging that the suit was premature because the Heberts' claims had not previously been presented to a medical review panel as required by the Medical Malpractice Act. The trial court overruled the exception on November 13, 1996 without assigning written reasons.
When this writ application was initially considered by this court, we granted writs and denied relief, stating only that we found no error in the trial court judgment. On rehearing, we clarified that denial to specify that the application was denied on the merits of the exception of prematurity, rather than a procedural problem. Thereafter, the Louisiana Supreme Court granted writs and remanded the case to this court for briefing, argument, and opinion. On remand, we reaffirm our initial holding that the trial court judgment is not in error.

Application of the Medical Malpractice Act
Under the provisions of LSA-R.S. 40:1299.47(A)(1), "[a]ll malpractice claims against health care providers covered by this Part," except those subject to arbitration, must be reviewed by a medical review panel prior to the filing of suit. Children's Hospital is unquestionably a "health care provider" under the Act. The pertinent definitions from the Louisiana Medical Malpractice Act for deciding this controversy are found in LSA-R.S. 1299:41, as follows:
(7) "Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another....
(8) "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provided arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of *530 prosthetic devices, implanted in or used on or in the person of a patient.
(9) "Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.
"Professional services" is not defined by the Medical Malpractice Act
In paragraph ten of their petition, the Heberts made the following specific allegations of fault against Children's Hospital:
The defendant, CHILDREN'S HOSPITAL OF NEW ORLEANS, is liable to the plaintiffs for any damage to the shipping canister which may have occurred once it was delivered into their care, custody and control and/or for the failure of the agents and/or employees of said defendant to ascertain whether or not any damage had occurred during shipment and their failure to take actions to prevent and/or minimize the resulting damage to the contents of the canister, all of which caused and/or contributed to the ultimate destruction of the cells and the resulting damages to the plaintiffs herein.
In their opposition to the exception of prematurity, the Heberts argued that the alleged negligence of Children's Hospital in the instant case did not occur within the course of rendering "health care" or "professional services" to Brennam, as those terms are defined by the Medical Malpractice Act. Instead, the Heberts aver, the tort occurred as a result of the alleged negligent handling of the canister which did not take place "during the course of any actual medical procedure." According to Children's Hospital, the trial court agreed "finding that the alleged negligence did not occur while the patient was in the hospital."[1]
Because the Medical Malpractice Act is special legislation, coverage and liability under the act must be strictly construed. Sewell v. Doctors Hospital, 600 So.2d 577 (La.1992); Williams v. St. Paul Insurance Companies, 419 So.2d 1302 (La.App. 4th Cir. 1982), writ denied, 423 So.2d 1182 (La.1982). Moreover, the Act does not encompass every tort claim arising as a consequence of a physician/patient relationship, but only unintentional torts arising from health care or professional services rendered. St. Amant v. Mack, 538 So.2d 657 (La.App. 1st Cir.1989). [Emphasis in original.]
More recently, in Hutchinson v. Patel, 93-2156 (La.5/23/94) 637 So.2d 415, the Supreme Court summarized as follows:
Construing the definition of "malpractice" in the context of the foregoing provisions, we conclude the legislature clearly intended to codify the traditional rule
in medical malpractice actions requiring either a physician's breach of the express or implied contract between him or her and a patient ..., or, more pertinent to the allegations in the present case, a physician's breach of the professional standard of care owed by every health care provider to a patient.... Under this interpretation, Dr. Patel's alleged "failure to warn" plaintiff does not constitute "malpractice" as defined in the Act because plaintiff was not Dr. Patel's patient pursuant to an express or implied contract establishing a physician-patient relationship.
Id. at 421-422.
The question of whether the Medical Malpractice Act covers negligent acts related to the transportation of blood products or transplantable materials is de novo in Louisiana. None of the published cases are helpful, because they involve facts which are easily distinguishable from those presented by the instant case. However, the Louisiana *531 Supreme Court has indicated that the following factors are appropriate for determining whether a particular alleged act falls within the purview of the Louisiana Medical Malpractice Act: (1) "whether the particular wrong is `treatment related' or caused by a dereliction of professional skill," (2) "whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached," and (3) "whether the pertinent act or omission involved assessment of the patient's condition." Sewell, 600 So.2d at 579, fn. 3.[2]
The allegations of negligence against Children's Hospital in the instant case do not meet the criteria set forth in Sewell. Although the particular wrong could arguably be considered "treatment related," nothing in the record indicates that expert medical evidence would be required to determine whether Children's Hospital breached some standard of care or that the particular act or omission involved assessment of the patient's condition. Since the particular negligence alleged does not meet the stated factors, we find no error in the trial court judgment and thus decline to grant relief.
WRIT GRANTED;
RELIEF DENIED.
NOTES
[1] The plaintiffs made similar allegations in a complaint of damages made against the relator and filed pursuant to the Medical Malpractice Act on April 15, 1996. The exception of prematurity was filed in May of 1996. The date of filing of the instant petition is not apparent. However, in their petition, the Heberts included a paragraph in which they stated that it was anticipated that the action against relator may fall under the Medical Malpractice Act. Plaintiff alleged that the relator is an indispensable party to the litigation and requested a stay of proceedings against the hospital while their claim was pending with the medical review panel. The status of the claim with the medical review panel is not known.
[2] Citing Holly P. Rockwell, annotation, What Patient Claims Against Doctor, Hospital, or Similar Health Care Provider Are Not Subject to Statutes Specifically Governing Actions and Damages for Medical Malpractice, 89 A.L.R.4th 887 (1991).