744 So.2d 156 (1999)
Valerie Anderson GARNICA
v.
LOUISIANA STATE UNIVERSITY MEDICAL CENTER, School of Dentistry.
No. 99-CA-0113.
Court of Appeal of Louisiana, Fourth Circuit.
September 8, 1999.
Writ Denied December 17, 1999.
*157 Richard P. Ieyoub, Attorney General, C.T. Williams, Jr., Special Assistant Attorney General, Metairie, Louisiana, Counsel for the Defendant/Appellant.
Gordon F. Wilson, Jr., Wilson & Bowling, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Court composed of Judge WILLIAM H. BYRNES, III, Judge MOON LANDRIEU, and Judge MICHAEL E. KIRBY.
BYRNES, Judge.
The Louisiana State University Medical Center, School of Dentistry ("LSU Dental School"), appeals a judgment overruling the LSU Dental School's dilatory exception of prematurity. We affirm.
According to Valerie Anderson Garnica's petition, in 1979, the plaintiff was treated at the LSU Dental School for jaw problems. Surgery on her right temporomandibular joint included the implantation of a Proplast prosthesis in her jaw.
In 1990 the manufacturer of the prosthesis notified oral surgeons to stop using the implants. The United States Food and Drug Administration ("FDA") sent out a safety alert to oral surgeons including those at the LSU Dental School. Plaintiff stated that: "The safety alert instructed the physicians to notify their patients of the defective product so that any problems or potential problems could be corrected by remedial surgery or other means." Although the LSU Dental School notified some patients, plaintiff asserts that she did not receive the notice.
Plaintiff alleged that sometime after 1991, she began to experience problems with her jaw. She was working as a chiropractor's assistant, and complained about her jaw to an oral surgeon patient of the chiropractor, who told the plaintiff about the problems with the implant. Plaintiff asserts that on or about December 5, 1996, the plaintiff called the LSU Dental School, was examined by LSU oral surgeons, and had surgery to remove the implant. Plaintiff avers that "she still experiences pain and limitation of motion in the jaw joint and she has experienced severe and permanent and irreparable bone loss in the jaw joint area." Plaintiff asks for damages caused by the defendant's negligence, and claims that timely notice would have prevented all or a substantial amount of the damages that she suffered as a result of the defective implant.
On November 24, 1997, the plaintiff filed her petition against the LSU Dental School. On February 12, 1998, the LSU Dental School filed an exception of prematurity, based on the claim that the LSU Dental School is a qualified health-care provider pursuant to the Public Act. Therefore, any claim against the LSU Dental School must be brought before a medical review panel prior to filing suit in civil district court.
After a hearing the trial court overruled the exception, finding that the plaintiff's allegations do not rise to the level of medical malpractice but were mere clerical administrative functions not constituting medical services. The trial court held that while the LSU Dental School is a state health care provider as defined by the Public State Act, the claim at issue is not by a patient as defined by the Public State Act and does not arise from medical services *158 performed by the state health provider. The LSU Dental School's appeal followed.
On appeal the LSU Dental School contends that the trial court erred in deciding that the health-care provider's alleged failure to provide follow-up information did not fall within the statutory standard for medical malpractice. The LSU Dental School complains that the information in question relates directly to the patient's treatment, and does not fall outside of the statutory standard for medical malpractice "simply because it can be loosely characterized as administrative in nature and because it occurred several years after the original treatment, rather than several days or weeks." The LSU Dental School argues that the plaintiff's claim against the LSU Dental School falls within the coverage of the Public State Act and constitutes malpractice against a patient. Therefore, the Dental School is entitled to have the claim reviewed by a medical review panel prior to the filing of an action in civil district court under the Public or State Act, La. R.S. 40:1299.39 et seq.
The parties agree that the LSU Dental School is a state health care provider that is subject to the Public or State Act (La. R.S. 40:1299.39), rather than the Louisiana Medical Malpractice Act (La. R.S. 40:1299.41 et seq.), the Private Act.
Under the Public or State Act, La. R.S. 40:1299.39 A(6) states:
(6) "Heath care" means any act or treatment which was performed or furnished or which should have been performed or furnished by any person covered by this Part for, to or on behalf of, a patient during the medical care, treatment or confinement of the patient.
La. R.S. 40:1299.39 A(4) of the Public or State Act provides:
(4) "Malpractice" means the failure to exercise the reasonable standard of care specified and required by Subsection B of this Section, in the provision of health care, when such failure proximately causes injury to a patient, as provided in Subsection B of this section.
Subsection B refers to the standard of care set out in La. R.S. 9:2794 with regard to the negligence of licensed physicians, dentists, optometrists and chiropractic physicians.
Both parties note that the definition of "malpractice" under the Private Act is more complete than that under the Public or State Act. Under La. R.S. 40:1299.41 A(8), the Private Act defines "malpractice" as:
[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely in the handling of a patient, including loading and unloading the patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs, and medicine or from defects in or failure of prosthetic devices, implanted in or used on or in the person of a patient.
La. R.S. 1299.39 A(3) of the Public or State Act provides:
(1) "Patient" means a natural person who receives, or should have received, health care from a person covered by this Part and any other natural person or persons who would have or may have a claim or claims for damages under applicable law arising out of, or directly related to, the claim or claims of the natural person who receives or should have received health care from a person covered by this Part.
Under the Private Act, a patient is defined under La. R.S. 40:1299.41 A(3) as "a natural person who receives or should have received health care from a licensed care provider under a contract expressed or implied."
The Public or State Act is strictly construed in favor of the patient. Doe *159 v. Medical Center of Louisiana, 612 So.2d 1050 (La.App. 4 Cir.1993), writ denied, 613 So.2d 1005 (La.1993). The State Act derogates the rights of injured parties and must be strictly construed against finding coverage. Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210. The state health care provider has the burden of proving its entitlement to the benefits of the State Act. Fincher v. State, Dept. of Health & Hospitals, 29,640 (La.App. 2 Cir. 4/2/97), 691 So.2d 844. Claims against a state health care provider do not automatically apply unless there is malpractice as defined by the State Act. In Doe v. Medical Center of Louisiana, supra, the collecting and screening of blood and blood products by a hospital's blood bank did not fall within the definition of health care. This court noted that a claim for slip and fall injuries by a visitor to the hospital was not covered by the Act. In Jure v. Raviotta, 612 So.2d 225 (La.App. 4 Cir.1992), writ denied, 614 So.2d 1257 (La.1993), the claim of the doctor's sexual misconduct with his patient was not covered by the Act. In Sewell v. Doctors Hosp., 600 So.2d 577 (La.1992), the collapse of a hospital bed was not malpractice.
In Dominick v. Relabilitation Hosp. of New Orleans, 97-2310, pp. 3-4 (La.App. 4 Cir. 4/15/98), 714 So.2d 739, 740-41, this court interpreted that the provisions of the Private Act included a claim by an elderly patient who slipped and fell because of alleged improper supervision and medical equipment. This court found that if the defendant's alleged conduct reasonably falls within the Act, it is subject to malpractice procedure even though the plaintiff alleged alternative theories of liability. In that case the issuance of a walker, instruction to the patient on how to use the walker, and assistance walking are acts performed or should have been performed or furnished by the health care provider to the plaintiff during her medical care, treatment or confinement.
In Price v. City of Bossier City, 96-2408 (La.5/20/97), 693 So.2d 1169, the plaintiff, a casino employee was treated in the emergency room after she was injured at work. The Louisiana Supreme Court held that the misrepresentation of the results of a drug test was not covered by the Medical Malpractice Act where the casino employee being tested was not receiving medical care and was not confined to a hospital. The casino employee was fired because the physician at the hospital reported the drug screen as positive to her employer. The physician and hospital were not entitled to a medical review panel because they were not covered by the Medical Malpractice Act where the plaintiff was not a patient within the definition of the Act. The act or omission did not occur during the plaintiff's medical care, treatment or confinement.
In Hebert v. Federal Express Corporation, 96-2684 (La.App. 4 Cir. 5/21/97), 695 So.2d 528, writ denied 97-1662 (La.10/10/97), 703 So.2d 606, the Hebert's child was a patient at Children's Hospital. The child underwent surgery to remove a cancerous tumor, chemotherapy, and a proposed bone marrow harvest and reimplantation. The bone marrow was taken from the child and sent to Florida to be purged of the cancer cells and then to be sent back to be put in the child's back. When the canister containing the marrow was shipped, the Children's Hospital discovered that the canister was damaged and the bone marrow was spoiled.
The Heberts sued Federal Express and Children's Hospital, alleging that the hospital was liable: (1) because the damage could have occurred while the hospital had the canister; and (2) for failing to take actions to prevent or minimize damage to the contents of the canister. This court affirmed the trial court's finding that overruled the hospital's exception of prematurity. The trial court found that the alleged negligence did not occur while the patient was in the hospital.
In Hutchinson v. Patel, 93-2156 (La.5/23/94), 637 So.2d 415, the Louisiana Supreme Court held that the Medical Malpractice *160 Act did not apply to the health care provider where the defendant psychiatrist allegedly failed to inform the plaintiff of her husband's threat to cause her injury. The husband made the threat to the psychiatrist in the course of his treatment of the husband. The wife was not a patient receiving health care at the time of her injury caused by the alleged breach of the doctor's duty. The Supreme Court found that the definition of malpractice, which was essentially the same under the State and Private Acts, did not apply under the Medical Malpractice Act. The plaintiff was not entitled to a medical review panel.
In Hebert v. Federal Express Corp., supra, 695 So.2d at 531, this court cited Sewell v. Doctors Hospital, 600 So.2d 577, 579, fn. 3 (La.1992), in which the Supreme Court indicated that the following facts are appropriate in determining whether a particular alleged act falls within the purview of the Louisiana Medical Malpractice Act:
(1) "whether the particular wrong is `treatment related' or caused by a dereliction of professional skill;"
(2) "whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached," and
(3) "whether the pertinent act or omission involved assessment of the patient's condition."
In the present case the determination of whether the hospital was liable based on the alleged failure to properly inform the patient of the defective jaw implant does not require expert medical testimony or evidence. The duty to notify the patient is a ministerial or clerical function and does not require any specialized training or knowledge. The duty did not arise from the performance of health care and was not during the patient's medical care, treatment or confinement under the definition of "health care."
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.