|,WALTZER, Judge.
STATEMENT OF THE CASE
Louann A. Munden, on behalf of herself and her minor child and as executrix of the estate of Donn Wiederhold, sued Charity Hospital, Medical Center of Louisiana at New Orleans (MCLNO), the Louisiana Health Care Authority, the State of Louisiana, Department of Health and/or Hospitals and the succession of Ronald Correll *282 for damages arising out of Correll’s having shot Wiederhold and himself while the former was a patient at Charity Hospital in New Orleans (Charity).
According to the petition, Wiederhold and Correll were “long time life companions” who were living together and had been living together for thirty years. On or about 9 June 1997, Wiederhold was a patient in Charity’s Intensive Care Unit, where Correll visited him on two separate occasions. During the second visit, a nurse allegedly told Correll that visiting hours had not yet begun and asked him to leave. When the nurse left to answer the telephone, Correll stood at [ 2Wiederhold’s bedside for about five minutes, kissed him on the forehead, fired two bullets into Wiederhold’s head and then shot himself.
The petition alleges that the nursing and hospital staff in Charity’s ICU were aware that Correll was despondent and that an agreement existed between Correll and Wiederhold and Correll whereby if one became terminally ill, the other would kill him and then commit suicide (the suicide pact).
The petition alleges that Charity’s medical staff knew that Wiederhold was not terminal and had a reasonable chance of recovery from the stroke that had hospitalized him, but failed to communicate this information to Correll since he was not Wiederhold’s next of kin.
The petition alleged that Wiederhold’s death was caused by the “fault, negligence and want of care” of Charity and MCLNO in the following respects pertinent to this appeal:
(a) Failing to provide adequate supervision of its patients, particularly in the ICU;
(d) and (e) Allowing Ronald Correll unrestricted and unsupervised access to the decedent, outside of visiting hours, despite knowledge of Mr. Correll’s despondent state of mind and his intent to act on the suicide pact;
(i) and (j) Failing to inform Correll of the nature of decedent’s condition, despite knowledge of his despondent state of mind and intent to act on the suicide pact, so as to avoid the likelihood of risk and harm;
|3(k) Such other acts of negligence by hospital staff and personnel, for which Charity and MCLNO are responsible under the doctrine of respondeat superior.
The State, through the Louisiana Health Care Authority on behalf of MCLNO, Charity Hospital and the Department of Health and Hospitals, filed an exception of prematurity, alleging that under La.R.S. 40:1299.39.1(B)(l)(a)(i), state entities may not be sued for medical malpractice until the complaint has been presented to and reviewed by a State Medical Review Panel. There is no dispute that this claim has not been so presented or reviewed.
The trial court rendered judgment on 3 March 1999 maintaining the exception of prematurity and dismissing the lawsuit without prejudice. From that judgment Munden appeals. We affirm.
FIRST, SECOND AND THIRD ASSIGNMENTS OF ERROR: The trial court erred in holding the alleged cause of action arises from medical malpractice and is therefore subject to review by a State Medical Review Panel prior to commencement of this suit. The trial court erred in applying the definitions and provisions of the Medical Malpractice Act (La.R.S. 40:1299.41 et seq.) to an action involving a State health care provider rather than the malpractice definition contained in the Malpractice Liability for State Services Act (La.R.S. 40:1299.39 et seq.).
LThere is nothing in the record to indicate that the trial court applied the malpractice definition contained in the private malpractice statute, La.R.S. 40:1299.41 et seq. On appeal, we shall determine whether the case comes within the ambit of the State malpractice statute.
In making our determination, we are first guided by the principle that the *283 limitations on the liability of a health care provider contained in both the private and state acts are special legislation in derogation of the rights of tort victims and, as such, the coverage of the acts should be strictly construed. The limitations apply only in cases of liability for malpractice as defined in the acts, and any other liability of the health care provider to the patient is not subject to these limitations. Sewell v. Doctors Hospital, 600 So.2d 577, 578 (La.1992). While Sewell was brought under the private malpractice statute, we find this reasoning to be compelling in the context of the state statute as well. Garnica v. Louisiana State University Medical Center, 99-0113 (La.App. 4 Cir. 9/8/99), 744 So.2d 156 and Fincher v. State, Dept. of Health & Hospitals, 29,640 (La.App. 2 Cir.4/2/97), 691 So.2d 844 applied this principle to a claim under the state malpractice statute.
The state statute defines malpractice as the failure to exercise the reasonable standard of care specified and required by Subsection B of La.R.S. 40:1299.39, in the provision of health care, when such failure proximately causes injury to a patient, as provided in Subsection B of this Section. La.R.S. 40:1299.39 A(4).
(1) The standard of reasonable care specified and required by this Section is as follows: The standard of care specified and required by this Section for licensed physicians and dentists shall be the same as that required | Kto be proven with respect to them under the provisions of R.S. 9:2794.
(2) No breach of the standard of reasonable care ... shall constitute malpractice within the meaning of this Section ... without its also being the proximate cause of each injury for which a recovery in damages is sought. A patient injured must fall within the specific class of persons legislatively intended, by the purpose and design of this Section, to be protected against such breaches of the standard of reasonable care set forth in this Subsection, the resulting injury must be of the kind specifically intended and designed by this Section to be prevented ..., and the resulting injury and damages sought ... must fall within the type of injury and damages for which a recovery is allowable by the purpose and intent of this Section in light of the particular legislative provisions, findings, and purposes expressed in this Section. La.R.S. 40:1299.39(B).
“Health care” is defined as any act or treatment which was performed or furnished or which should have been performed or furnished by any person covered by this Part for, to or on behalf of, a patient during the medical care, treatment or confinement of the patient. La.R.S. 40:1299.39 A(6).
The State statute defines “patient” as a natural person who receives, or should have received, health care from a person covered by this Part and any other natural person or persons who would have or may have a claim or claims for damages under applicable law arising out of, or directly related to, the claim or claims of the natural person who receives or should have received health care from a person covered by this Part. La.R.S. 40:1299.39 A(3).
The Act recognizes that the Civil Code governs the legal relationships of private persons among themselves and is inapplicable to public entities and their legal relationships, but provides that a patient or his representative shall have a right to recover from the state certain losses in tort or quasi-tort to the extent and within the limitations defined and allowed by this Section of public law due to | ¿malpractice as defined in the Act, in the circumstances and within the parameters provided by the Act, on the sole basis of the Act as a special substantive sui generis statutory grant in the domain of public law. La.R.S. 40:1299.39 C.
La.R.S. 40:1299.39 D makes it clear that plaintiffs bringing claims against the State have no greater rights than they would have if bringing the same action against a *284 private person. That section provides in pertinent part:
Whenever in the same circumstances, but not more than to the same extent, that a patient would, under the private law, , be allowed a recovery, due to malpractice, from a private person not employed by nor acting on behalf of a public entity, a patient [or his representative] ... shall have a right to recover, from the state, losses, ... but only to the degree and within the limits allowed by, and subject to the terms and conditions of, this Section of public law, when and insofar as such losses proximately result from malpractice as defined in this Section ...
The Act recognizes that there may by circumstances in which the damages are caused, in part, by acts of a third party in conjunction with malpractice and provides in La.R.S. 40:1299.39 D(l) for apportionment of fault as between the malpractitioner and the third party tort-feasor.
The State malpractice statute provides that all malpractice claims against the state or its agencies, with exceptions irrelevant to this appeal, shall be reviewed by a state medical review panel established as provided by the Act, to be administered by the commissioner of administration. La. R.S. 40:1299.39.1 A(l). No action against the state or its agencies may be commenced in court before the complaint has been presented to a state medical review panel. La.R.S. 40:1299.39.1 B(l)(a)(i).
|7The jurisprudence is illustrative of the types of claims that may be considered to be within the definition of malpractice. In Sewell, supra, the petition alleged that plaintiff was recovering from surgery when his bed collapsed causing further injury. Liability was based solely upon the allegation that defendant provided a defective bed that was unreasonably dangerous in its normal and intended use. The court held that since the action was based SOLELY on strict liability for a defective thing under defendant’s custody, the private act did not apply. A defective hospital bed is not one of the defective things specifically enumerated in the definition of malpractice in the Act. Moreover, plaintiff did not allege that any act or omission by the health care provider caused the bed to be defective or contributed to its collapse, nor did plaintiff allege that the provider knew or should have known of the defects. Relying on these facts, the court held that the private statute is not applicable to the cause of action alleged in the suit.
In Hebert v. Federal Express Corp., 96-2684 (La.App. 4 Cir. 5/21/97), 695 So.2d 528, writ denied, 97-1662 (La.10/10/97), 703 So.2d 606, this Court found that a claim that Children’s Hospital and Federal Express were negligent in the return of refrigerated tissue from Florida to Children’s was not a claim of medical malpractice. This Court held that nothing in the record indicated that expert medical evidence would be required to determine whether Children’s breached a standard of care. This Court, citing Sewell, noted that the following facts are appropriate in determining whether a particular alleged act constitutes malpractice:
|s(l) whether the particular wrong is “treatment related” or caused by a dereliction of professional skill;
(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
(3) whether the pertinent act or omission involved assessment of the patient’s condition. Hebert, supra 695 So.2d at 531.
In Fincher, a case brought under the State malpractice statute, the court noted that the private statute provided a broader definition of malpractice, but held:
However, as defined by [the State malpractice statute], “malpractice” includes the failure to exercise the reasonable standard of care in the provision of health care, and “health care” is defined, exactly as in the [private statute] to *285 include “any act * * * which was performed or furnished or which should have been performed or furnished * * * during the * * * confinement of the patient.” Regardless of the provisions of the [private statute], we are constrained to find that Mrs. Fincher’s petition alleges a failure to render health care as defined in [the state statute]. 691 So.2d at 847.
The gravamen of the Fincher claim was that a resident of the Northwest Louisiana Developmental Center in Bossier City, who had previously fallen and been fitted with a protective helmet, fell while unsupervised and while not wearing his helmet. The petition charged the hospital with acts of negligence substantially related to the treatment the resident was supposed to receive and, therefore, was subject to dismissal on an exception of prematurity.
This Court likewise held that a claim that a health care provider was guilty of negligence in failing to commit a patient involuntarily and in warning third parties of threats made by the patient is treated as malpractice. In re Viviano, 93 1368, p. 10 (La.App. 4 Cir. 11/17/94), 645 So.2d 1301, 1307-08, writ denied, 94-3095 (La.2/17/95), 650 So.2d 254.
In Dominick v. Rehabilitation Hosp. of New Orleans, 97-2310 (La.App. 4 Cir. 4/15/98), 714 So.2d 739, this Court applied the private statute to allegations in a slip and fall case that the health care provider failed to maintain the premises in a reasonably safe condition, failed to warn plaintiff of a dangerous condition (wet floor), failed to issue a suitable walker to plaintiff and failed to instruct her adequately on the use of the walker. This Court noted that where one or more alternative theories of liability are covered by the Act, courts generally apply the Act’s procedure. Despite plaintiffs allegations that she slipped on a substance on the floor, the Court applied the Act, holding that the facts alleged in her petition disclosed a substantial relationship between her fall and the defendant’s acts. These facts included issuance of an inadequate walker, inadequate instruction and inadequate assistance walking, all of which we held to constitute health care because they are acts performed or which should have been performed or furnished by the health care provider to plaintiff during her treatment and confinement.
Collection and screening of blood and blood products by a state hospital’s blood band does not fall within the State statute’s definition of health care. Doe v. Medical Center of Louisiana, 612 So.2d 1050 (La.App. 4 Cir.), writ denied, 613 So.2d 1005 (La.1993).
Misrepresentation of results of a drug test that led to an employee’s dismissal was held not covered by the act where the employee was not receiving medical care and was not confined to a hospital. Price v. City of Bossier City, 96-2408 (La.5/20/97), 693 So.2d 1169.
I iqA state hospital’s duty to notify a patient who had previously received a jaw implant of a manufacturer’s recall was held to be a ministerial or clerical function, not requiring any specialized training or knowledge. Therefore, the State statute did not apply. Gamica, supra.
In the instant case, Munden alleges acts of negligence as to which expert testimony will be required, including the health care providers’ decisions relating to disclosure of Wiederhold’s condition to Correll and relating to allowing Correll to visit Wiederhold. These medical decisions are clearly related to the staffs treatment of Wiederhold. Furthermore, it is clear that in making these decisions, the staff necessarily assessed Wiederhold’s condition. Thus, we find that these facts meet the Hebert standard.
Furthermore, the allegations of improper supervision place the case within the reasoning of Fincher. The acts complained of constitute health care within the Dominick definition since they were performed or should have been performed by the health care provider.
*286 Munden suggests that Klingman v. Green, 616 So.2d 762 (La.App. 1 Cir.1993) requires a contrary result. In that case, plaintiff was attacked by a patient while he, himself, was a patient at the East Louisiana State Hospital. The State argued that since the only way it could have protected plaintiff would have been by restraint of the aggressor patient, the injury was the result of malpractice. The First Circuit held that because plaintiffs injuries were not alleged to be from health care or professional services he received or should have received, he was not in the class of persons intended to be covered by the State statute.
However, in the instant case, Munden alleges that the hospital and its medical and nursing staff negligently allowed Cor-rell to visit Wiederhold. Such a | n decision is clearly a part of provision of medical care. Likewise, the allegation that the health care providers negligently failed to disclose Wiederhold’s condition to Correll involves a medical determination of what actions would have been in the best interest of patient care. Resolution of the issue of whether these medical decisions violated applicable standards of care will require expert medical evidence. In light of the negligence allegations contained in Mun-den’s petition, which distinguish the instant case from Klingman, we are not persuaded by the First Circuit’s reasoning.
FOURTH AND FIFTH ASSIGNMENTS OF ERROR: The trial court erred in basing its decision on Dominick v. Rehabilitation Hospital of New Orleans, 97-2310 (La.App. 4 Cir. 4/15/98), 714 So.2d 739 rather than on Klingman v. Green, 616 So.2d 762 (La.App. 1 Cir.1993).
For the reasons set forth in the foregoing assignment of error, this assignment is without merit.
CONCLUSION AND DECREE
We affirm the judgment of the trial court maintaining the Exception of Prematurity, dismissing the petition without prejudice. We assess all costs of this appeal to appellant.
AFFIRMED.