hLEON A. CANNIZZARO, JR., Judge.
On the application of the relator-defendant, David Dulitz, M.D.[1], we grant this writ to review the correctness of a trial court judgment denying the exceptions of *671 prematurity and lack of subject matter jurisdiction in this medical malpractice case.
FACTS
On or about June 11,1998, Alberta Jackson, went to the emergency room at the Medical Center of Louisiana at New Orleans (“MCLNO”), Charity Campus (“Charity Hospital”), with complaints of dizziness, abdominal pains, and a history of seizure disorder. After being admitted to Charity Hospital, Jackson was transferred to the MCLNO, University Campus, (“University Hospital”) on June 12, 1998. Following an evaluation, Jackson was discharged from the hospital with a diagnosis of urinary tract infection, non-insulin dependent diabetes mellitus, and a history of seizure disorder. Chris Cangelosi, M.D., signed the hospital discharge summary dated June 12, 1998. However, because of transportation issues, Jackson’s discharge was delayed until the morning of June 13, 1998. Later that evening, emergency medical services rushed Jackson back to the emergency room bat Charity Hospital, with complaints of severe pain and dizziness. Jackson was admitted to the hospital’s intensive care unit, where she died the following day. Cardiogenic shock, acute pancreatitis, and intractable ventricular arrhythmia were listed as the causes of her death.
STATEMENT OF THE CASE
The plaintiff, Mitchell Jackson, on behalf of the decedent’s minor child, Antonia Jackson, filed the instant malpractice suit on May 23, 2002, naming as defendants, the State of Louisiana, on behalf of LSU Healthcare Services Division and the MCLNO; Donna Walker, M.D.; Dave Du-litz, M.D.; Chris Cangelosi, M.D.; and Glen Steeb, M.D., all of whom were alleged to have provided medical care to the decedent at the MCLNO. However, prior to filing the medical malpractice action, the plaintiff filed a request with the Commissioner of Administration for review of his complaint by a medical review panel, naming only the LSU Medical Center-New Orleans a/k/a the MCLNO and Dr. Cange-losi as defendants.
Dr. Dulitz filed a dilatory exception of prematurity and a declinatory exception that the court lacked subject matter jurisdiction of the plaintiffs malpractice action. The trial court denied both exceptions.
APPLICABLE LAW
La. R.S. 40:1299.39.1(A)(1), of the Medical Liability for State Services Act (the “MLSSA”), states that “[a]ll malpractice claims against the state, its agencies, or other persons covered ... shall be reviewed by a state medical review panel ...” |aLa. R.S. 40:1299.39.1(B)(1) states that no malpractice action against the state, its agencies or other persons covered “may be commenced in any court before the claimant’s complaint has been presented to a state medical review panel ...,” unless the use of the medical review panel is waived by agreement of both parties. Unless compromised and settled, all medical malpractice claims shall be submitted to administrative review “before such right in individual claims can become sufficiently existent to be susceptible of judicial recognition or adjudication.” La. R.S. 40:1299.39(E)(1).
The exception of prematurity may be raised to a malpractice action where the claim was not presented to a medical review panel as required by the MLSSA. See Munden v. Charity Hosp. & Medical Center, 99-1918, p. 3 (La.App. 4 Cir. 12/15/99), 754 So.2d 281, 282. The limitations on the liability of a health care provider contained in the MLSSA are special legislation in derogation of the rights *672 of tort victims; thus, any ambiguities in the act should be strictly construed against coverage. Ruiz v. Oniate, 97-2412, p. 4 (La.5/19/98), 713 So.2d 442, 444; Munden, supra, 99-1918 at p. 4, 754 So.2d at 282-283. Nonetheless, the Court in Ruiz noted that “legislation is a solemn expression of legislative will, and therefore, interpretation of a law involves primarily the search for the legislature’s intent.” Ruiz, supra, 97-2412 at p. 4, 713 So.2d at 444. (Citations omitted). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. arts. 10 and 12.
DISCUSSION
The dispositive issue in this case is whether a qualified health care provider must be a “named” defendant in the medical review proceeding as a condition I ¿precedent to an action against him, or whether it is sufficient for purposes of the MLSSA that the “claim” against him was fully reviewed in a medical review proceeding. Nowhere in the MLSSA does it specifically state that no malpractice “claim” shall be brought against a qualified health care provider unless that “claim” is presented to a medical review panel in a proceeding in which the said health care provider is a “named” defendant.
In its submission of evidence to the medical review panel in the instant case, the State presented the decedent’s medical records, records of additional lab work performed on the decedent, EMS records, “position papers” from Drs. Walker and Cangelosi, an autopsy protocol, and a report from the plaintiffs expert physician. The plaintiff submitted “partial medical records” from the MCLNO. The decedent’s June 12, 1998 hospital discharge summary lists the attending physician as Dr. Walker, the resident as Dr. Dulitz, and the intern as Dr. Cangelosi, but it discloses no treatment by any specific physician. It is signed by Dr. Cangelosi.
In their reasons for finding that “the evidence [did] not support the conclusion that the Medical Center of Louisiana at New Orleans-Charity Campus and Dr. Cangelosi failed to meet the applicable standard of care,” the medical review panel noted that on the first admit the decedent was properly admitted and treated with antibiotics appropriate for a urinary tract infection, pyelonephritis and pneumonia; that her condition had improved; and that it was not a deviation from the standard of care to discharge her with a fever. The panel further found that on the second admit, the decedent appropriately received aggressive and continuous intensive medical care and observation. They concluded that the possibility of heat illness at her home may have contributed to the decedent’s rapid deterioration and was a catalyst for her ultimate demise.
The plaintiffs petition against the MCLNO is couched in terms of respondeat superior — “through its employees and/or agents malpracticed [sic] or | .^otherwise conducted itself below the standard of care....” In a malpractice action against a hospital under the theory of respondeat superior, the applicable standard of care and burden of proof are the same as for the physician or qualified health care provider whose activities are questioned.
The trial court denied Dr. Dulitz’s exception of prematurity because the State, *673 in defending the claim and submitting evidence to the medical review panel, specifically referred to Dr. Cangelosi and all physicians at the MCLNO who had treated the decedent. The State argued that it satisfied the applicable burden of proof as to Dr. Cangelosi “and/or the treating physician(s) at [MCLNO].” The State also referred to Dr. Dulitz in setting forth the sequence of treatment to the decedent. While Dr. Cangelosi was the only physician whose conduct was specifically defended by the State in its submission of evidence, the State argued that the decedent’s death “was not caused by any deviation on the part of Dr. Cangelosi or the medical staff at MCLNO-Charity campus and/or MCLNO-University campus.”
The primary objective of the MLSSA is to entice professionals to provide health care to patients on behalf of the State by affording or enhancing protection from malpractice judgments for such professionals. Ruiz, 97-2412, pp. 7-8, 713 So.2d at 446-447. The medical review panel in this case considered all acts, omissions and/or neglects by all physicians at the MCLNO, who were involved in the treatment of the decedent, in order to review the hospital’s liability for the acts of its agents. The legislative goal of protecting health care providers by requiring that a medical review panel review their actions has been satisfied in this case. Thus, the plaintiffs suit against Dr. Dulitz can proceed even though he was not a named defendant before the medical review panel. As previously mentioned, the MLSSA does not specifically require that the claim be reviewed in a medical review panel proceeding in which the health care provider is a named defendant. |fi As such, we find that the medical review panel, in reviewing the plaintiffs complaint in accordance with the MLSSA, also considered the actions and inactions of Dr. Dulitz, and thus the civil suit against him is not premature.
Finally, we note that Dr. Dulitz, a specialist in internal medicine, asserts in his writ application that the medical review panel that considered the plaintiffs complaint was composed of physicians whose specialty was emergency room medicine. Because the panel contained no specialist in internal medicine, Dr. Dulitz argues that he has been denied his statutory right as a qualified health care provider to have a claim against him heard before a medical review panel comprised of physicians from his same specialty, citing La. R.S. 40:1299.89.1 C(3)(f)(v).[2]
La. R.S. 40:1299.39.1 C(3)(f)(v) states that where there are multiple defendants, “one or more of whom are health care providers other than a hospital,” the members of the medical review panel shall be selected from health care providers who are from the same class and specialty of practice of health care providers “as are any” of the non-hospital defendants, “except that when one of such defendants is a physician, the panelists shall have the minimum qualifications of also being physicians.” Thus, even if Dr. Dulitz had been named as a defendant in the medical review panel proceeding, since Dr. Cangelosi was also a named non-hospital defendant, the physician member of the panel selected by the defendants could have been from the same specialty as Dr. Cangelosi. Thus, in this particular case, Dr. Dulitz was not necessarily entitled to have his actions reviewed by a specialist in internal medicine.
*674 ^CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.
WRIT GRANTED; JUDGMENT AFFIRMED.
KIRBY, J., DISSENTS WITH REASONS.

. The writ application refers to the relator as David Dulitz, M.D. However, the plaintiffs' petition for damages named the defendant as Dave Dulitz, M.D.

. The documentary evidence in the record indicates that at the time of the alleged malpractice Dr. Dulitz was a resident physician at MCLNO. Nothing indicates that he was a specialist in internal medicine at that time.